In the Matter of NATIONAL AWARDS MFG. INC., Debtor.

Bankruptcy No. 3-82-02247.

United States Bankruptcy Court, S.D. Ohio, W.D.

Dec. 30, 1983.

Alan B. Schaeffer, Dayton, Ohio, for debtor in possession.

Edward M. Smith, Cr. Com'n., Steve McHugh, Thomas B. Talbot, Mary Biagioli, Dayton, Ohio, for debtors.

## MEMORANDUM DECISION

CHARLES A. ANDERSON, Bankruptcy Judge.

This matter came on for a continued hearing on 1 November 1983 upon the amended Plan of Reorganization duly filed on 23 August 1983 and Objection to Confirmation by the Unsecured Creditors' Committee filed on 14 October 1983.

National Awards Mfg., Inc. (Debtor in Possession), filed its voluntary petition for relief on 10 August 1982. It has continued to operate its business of manufacturing trophies and plaques.

At the time of filing, Dan Paxton was President (since removed) and a Director and the other Directors were Frank Comito, Dave Sullivan, Richard Merola, and Dennis Freyvogel.

In pertinent part the Plan as amended typically provides for payment of administrative expenses under Class 1; for payment in full of federal tax liabilities in the amount of $13,548.73 plus interest at the rate of $300.00 per month under Class 2;

and a disputed state and local tax liability in the amount of $2352.16 to be paid in full at $46.70 per month for 36 months under Class 3.

Class 4 is "allowed secured claims" in the amount of $164,173.43, to be paid only after a provision for abatement until Classes 1, 2, 3 and 5 Creditors are paid.

Class 5, Unsecured Claims, shown in the amount of $93,426.30, are to be paid pro rata 15.2% of their claims, payable each month for 24 months, but not to exceed a gross monthly distribution of $591.70.

The Plan does not contemplate the infusion of any additional risk capital. That is, all plan payments are to be funded only from net income.

The conditions which precipitated the necessity for seeking relief under Chapter 11 were a combination of market conditions and deficient management. The accounting information, although in great part conjectural and sketchy, indicates that the operating profits have improved, if any, only to a minor degree, despite evidence of improved management capabilities and a slight reduction in operating expenses, especially lease payments.

The only balance sheet, and related statements of income expenses, and retained earnings reflect a critical net profit situation, a break even point at best. The cash position of the company is critical and casts doubt upon any future operation after payment of merely the administrative expenses accrued during the past year of business operation.

The Class 4 "allowed secured claims" is primarily composed of Richard Merola, (56%), Frank Comito (16%) and Dave Sullivan (16%), who are also officers or directors and shareholders of the corporation. Security agreements and financing statements covering accounts receivable were executed in their behalf, but were never properly perfected by filing. These loans also resulted in the acquisition of capital stock by the "secured parties."

## DECISION

Upon the evidence and post trial memoranda submitted in behalf of the Unsecured Creditors' Committee on 9 November 1983 and in behalf of the Debtor in Possession on 14 November 1983, the court is constrained to deny confirmation of the Plan of Reorganization as amended.

The contesting parties have very astutely argued contradictory positions regarding the "best interests of creditors". It is interesting to note that Class 4 creditors are not only unsecured but corporate insiders. Although the evidence as to the present valuation of the corporate assets consists of only tenuous accounting information not substantiated by any disinterested, professional appraisal and the profit and loss experience of the business shows no substantial success since the petition filing over a year ago, the court does not reach the "best interest" factors because of more fundamental legal problems, and further without reference to whether sufficient acceptances by each class were filed by creditors who are not "insiders". See 11 U.S.C. § 101(25). Further, whether all classes which are impaired have accepted (even though contested and a close question on the facts) might necessitate an application of the absolute priority rule because of the special provisions for Class 4 (the corporate stockholders and directors who hold an unperfected security interest) in light of requirements of 11 U.S.C. § 1129(b)(1), the consideration of other more substantive facts is dispositive.

In analyzing the latest material financial evidence submitted (compiled as of July 31, 1983), which seems currently inadequate for ratio-analysis techniques, certain time-tested accounting ratios render reliable interpretation possible (considering the August 31, 1982 accounting reports). In determining feasibility of the plan, the primary concern is the company's liquidity position, that is, the ability to meet obligations as they mature. Herein the ratio of current assets (cash, inventories, accounts receivable, and other potential receivables) available to current liabilities (accounts payable, tax obligations, accruing operating

expenses and payrolls) as adjusted for plan requirements is in the range of an anticipated break even to a negative ratio, whereas industry medians for the manufacturing product range between 2:1 and 4.2:1, as taken from Dun & Bradstreet, Inc. key ratios.* Using the "acid-test" ratio by excluding the raw materials inventory because this asset is not quickly convertible into cash, the liquidity position after confirmation becomes even more critical because improved profitability in operations is not evident. The evident downtrend in liquidity casts considerable doubt on the reliability of actual net profits (loss) shown on the income statement and the ability of management to maintain the enterprise. As there is no substitute for an adequate influx of dollars to cover overhead, the gross profit ratio (percentage) should have improved (or at least remained constant) if the enterprise is to be viable and survive. The downtrend shown is significant, even though slight in percentage. In this era of inflationary pressures reduction of operating expenses would be difficult to achieve rendering the lessening of lease costs herein as insignificant to feasability.

The plan does not contemplate the infusion of any additional capital and merely the payment of administrative expenses would reduce the cash position of the business to a negative and more critical accounting factor. There is considerable doubt that the business operations would fund even the initial payments required upon confirmation of the plan. There has been no material improvement in the operating condition of the business in over a year's experience since filing, even without the burden of making the payments under the Plan. Certainly mere optimism of anticipated increased business volume in the absence of sound financial statements cannot be a substitute for the infusion of risk capital. The fact is significant that the previous capital contributors, with claims totalling at least $165,000.00 and who stand to gain ultimately by not liquidating the business, have not proposed even a minimal contribution of additional capital. Thus, the unsecured creditors who are not shareholders are to be paid only 15.2% of their claims, or $14,200.00 over a period of two years.

The ability to pay basic and obvious accrued administrative expenses and then survive is not established from the evidence, which flaunts the historical purpose of Chapters X and 11 in avoiding the dilution of business assets and enhancing the potential recovery to creditors. The reorganization process discredits the imminence of an unsuccessful plan and the further dilution of assets from the expenses of an inevitable subsequent reorganization or inevitable liquidation process. Unless the evidence by a clear and convincing test demonstrates that "confirmation of the plan is not likely to be followed by the liquidation, or the need for further reorganization of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan", the court is constrained to deny confirmation. 11 U.S.C. § 1129(a)(11). On the facts, a finding to confirm could only be made, if ever, upon the infusion of additional risk capital.

---

* as taken from *Key Business Ratios in 125 Lines,* as reproduced in *How to Use Financial State-* *ments, Second Edition* by Irving Kellogg, Shepards, Inc. McGraw-Hill Book Company.