In re Ralph L. **STOFFEL** and **Maryann H. Stoffel, individually and dba River Ridge Farm, Debtors.**

Bankruptcy No. 3–82–2359.

United States Bankruptcy Court, D. Minnesota, Third Division.

Aug. 20, 1984.

Timothy Moratzka, Hastings, Minn., for debtors.

Steven Beatty, Minneapolis, Minn., for Cargill.

David Hackley, Minneapolis, Minn., for Borg Warner.

Sheridan Buckley, St. Paul, Minn., for FLB.

Mary Carlson, Minneapolis, Minn., for FmHA and CCC.

Michael Iannacone, St. Paul, Minn., for Unsecured Creditors' Committee.

## ORDER DENYING CONFIRMATION OF DEBTORS' PLAN OF REORGANIZATION

JOHN J. CONNELLY, Bankruptcy Judge.

This matter came before the court for confirmation of debtors' first amended plan of reorganization. Written objections to confirmation were made by Borg Warner Acceptance Corporation ("Borg Warner"), Federal Land Bank of St. Paul ("FLB"), and Cargill Leasing Corporation ("Cargill"). Oral objections to confirmation were lodged by Farmers Home Administration ("FmHA") and Commodity Credit Corporation ("CCC"). Also before the court was the motion of Cargill for assumption or rejection of an irrigation equipment lease pursuant to 11 U.S.C. § 365. Motions to dismiss the case or, in the alternative, conversion of the case to a Chapter 7 proceeding were brought by FLB, the Unsecured Creditors' Committee, and Vermillion State Bank.

I

The debtors filed a voluntary Chapter 11 bankruptcy petition on December 13, 1982. The debtors primary source of income is their cash grain farming operation located in Hastings, Minnesota. At the time of filing, the debtors' schedules reflected $709,000.00 of debt which included $625,-000.00 of secured debt. The assets were valued at $626,000.00 of which $418,000.00 represented the value of 320 acres of real property.

The debtors have long-term secured debts to the following entities: FLB—$341,085.00; FmHA—$107,617.00; and Florence Stoffel—$120,000.00. Interest accrues on the FLB note at 9% per annum, or approximately $105.20 per day. Interest on the two FmHA notes, the 1979 note for $26,300.00 and the 1981 note for $66,000.00, accrues at the rates of 9½% and 13¼% per annum respectively. Interest on the Stoffel note accrues at 7% per annum. FLB is secured by first mortgages on both the homestead and farm real estate. FmHA is secured by a second mortgage on the real estate and security interests in approximately $50,000.00 worth of farm machinery and equipment. Florence Stoffel is secured by a contract for deed on all the farm real estate.

In so far as the debtors' plan deals with the land debts, it proposes deferral of any payment to both FmHA and FLB until December of 1986 at which time payment is to commence at the contract schedule and

rate. The plan further provides that payment of all defaults and suspended payments be postponed until the end of the contracts. The plan proposes to pay Florence Stoffel, the debtor's mother, on the contract for deed according to its terms commencing in November of 1984, with all defaults and arrearages to be paid at the end of the contract. It is significant to note that as of the date the bankruptcy petition was filed the debtors had not paid FLB since 1982 and were in default in the amount of $7,331.13. The current delinquency on the FLB note is $62,207.35. Likewise, FmHA had not received any payments since 1981 and, as of the filing, the debtors were in default in the amount of approximately $15,000.00. The current delinquency on the FmHA notes totals approximately $45,000.00.

Objections to confirmation were filed by a number of creditors. FLB filed an objection to confirmation stating that the plan treated their debt in an unfair and inequitable manner in that it proposed substantial deferral of repayment of missed payments. FLB also objected to confirmation on the basis that the plan is not feasible. FmHA lodged oral objections to confirmation substantially similar to those of FLB, *i.e.*, that treatment of their debt was unfair and inequitable and that the plan is not feasible. Borg Warner also filed an objection to confirmation stating that the plan did not provide Borg Warner with the "indubitable equivalent" of their claim, *i.e.*, immediate 100% payment of $7,525.66 as a secured and guaranteed debt. Cargill filed an objection to confirmation on the basis that the plan neither expressly assumed or rejected the Cargill lease as required by 11 U.S.C. § 365. At the hearing on confirmation, the debtors rejected the Cargill lease.

## II

■ Confirming a plan of reorganization requires the court to find that all of the requirements set forth in 11 U.S.C. § 1129 are met. Section 1129(a)(8) conditions confirmation upon a showing that all classes impaired under the plan have voted for acceptance. This requirement has not been met. FLB, FmHA, and Borg Warner are impaired classes under the plan which have not voted for acceptance.

The § 1129(a)(8) requirement may be circumvented if the debtor can demonstrate that the criteria outlined in 11 U.S.C. § 1129(b)(1), the so-called "Cram-down" provision have been met. The subsection reads:

Notwithstanding Section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

The burden is on the debtor to prove the plan meets the fair and equitable standards by clear and convincing evidence. See *In re National Awards Mfg., Inc.*, 35 B.R. 691, 693 (Bankr.S.D.Ohio 1983).

■ This court feels the debtors have not met their burden. The long delay in the initial payment to FLB is simply not fair to that creditor. The debtors have made no payments to the creditor since 1982. The cumulative effect, tacking together the pre-confirmation period and the time before initial payment is due, is to defer any payment on the debt 4½ years, and further defer repayment of arrearages and defaults 28 years, but continue using the land. If the plan fails in the first two years for any reason, the only remedy available to FLB would be to bring a motion to dismiss. The debtors retain the benefits of use without the burden of payment.

More importantly, the debtors plan to ignore a $202,000.00 debt for 24 years. The plan proposes to commence repayment of the FLB debt on December 1, 1986. Post-petition interest from the date of filing until December 1, 1986 will total approximately $202,000.00. Payment on the

accrued interest ($202,000.00) will be further delayed until the year 2010 when full payment will be due. The plan states,

> The creditor in Class H, Federal Land Bank, shall be paid 100% of its allowed secured claim by curing default and keeping current according to the contract terms the homestead mortgage. The farm real estate mortgage shall be paid as follows: by deferring all payments of the principal and interest in said claim until December 1, 1986 during which time interest shall accrue at the contract rate. Payment shall then begin on the contract schedule and all default and deferred amounts shall be due at the end of the contract period. Interest shall accrue on the unpaid balance at the contract rate until the balance is paid.

Deferring payments for 24 years and adding interest at the contract rate, without compounding the interest, results in a $638,320.00 debt payable in 2010. Compounding the interest for 24 years results in a debt in excess of $2,000,000.00. FLB must await repayment for 26 years. This is simply not realistic treatment of the debt. The plan does not fulfill the § 1129(b)(1) standards.

The same analysis discussed, *supra*, applies to the proposed treatment of the FmHA debt. The debtors have not made any payments to FmHA since 1981. Under the plan, the debtors propose to recommence payment under the terms of the notes in 1986. The five-year deferral in making any payment coupled with total deferral of repayment of the missed payments and interest until the end of the respective contract periods, 1986 (on the $26,300.00 note) and 2011 (on the $66,-000.00 note), is neither fair or equitable and discriminates unfairly against FmHA.

Basically, by deferring repayment to FmHA and FLB the debtors are forcing them to finance their operation. In the context of a reorganization process, this is allowable only where there is some sort of adequate protection of the creditors' interests. See, *e.g.*, 11 U.S.C. § 363 and § 361. The debtors are not offering the creditors any additional security for the deferred payments. Under these circumstances, the plan does not treat either FmHA or FLB fairly and equitably. Accordingly, the court cannot confirm the plan.

### III

■ The debtors' plan also fails to meet the feasibility requirements of the Code. 11 U.S.C. § 1129(a)(11) demands that the proposed plan be capable of working as projected. The court must find that confirmation will not "be followed by the liquidation, or the need for further reorganization," 11 U.S.C. § 1129(a)(11). In essence, the plan must generate sufficient income during the life of the plan to meet payments of debts retained in the plan. The debtors have failed to demonstrate the feasibility of this plan.

Assuming the debtors can generate income between $23,000.00 and $32,000.00 more than that generated in 1983, even without the Cargill irrigation equipment and the livestock sold during the pendency of the case, they will not be able to pay the debts under the plan and continue operations on an ongoing basis. In 1985, the first year of proposed repayment of land debt, the debtor's projected income minus the costs of operation and living expenses, [$127,275.00 minus $43,925.00 and $22,-500.00] leaves $60,850.00 to pay debts under the plan. The interest alone on the land debt will be approximately $58,043.00 in 1985 leaving only $2,807.00 for payment to other creditors and input expenses for 1986. It is quite apparent the debtors will be unable to meet their obligations under the plan without outside financing. The debtors failed to present evidence of any outside financing commitment. Without any evidence to support the debtors' admitted need for additional financing, the court cannot find that the plan is feasible.

### IV

■ The final issue presented in this matter is FLB's motion to dismiss the case. The debtors are farmers and therefore cannot be involuntarily converted to a Chapter

7 liquidation. 11 U.S.C. § 1112(c). Therefore, this court is faced with the choice between allowing the creditors' positions to continue to deteriorate or dismiss the case permitting the creditors to pursue their state law remedies. One ground for dismissing a Chapter 11 case is the lack of a reasonable likelihood of rehabilitation causing continuing loss or diminution to the estate. 11 U.S.C. § 1112(b)(1). In this case, it has been 1½ years since filing for relief and the debtors have been unable to propose a workable plan of reorganization. The debtors have not made any substantial payments on the long-term debt and the estate continues to suffer loss from increasing accumulation of interest on those debts. Therefore, the best interests of all parties is served by dismissal of this case.

For the reasons discussed, *supra,* the court declines to confirm the debtors' plan of reorganization and HEREBY GRANTS the motion of FLB to dismiss this case.

THEREFORE, IT IS ORDERED that the above-entitled case be and the same is hereby dismissed.