In re A. Garland SLOAN d/b/a Garland Sloan Farms, Debtors.

Bankruptcy No. 84–01871.

United States Bankruptcy Court, D. South Carolina.

Dec. 13, 1985.

W.E.S. Robinson, Robinson, Smith & Mendoza, Columbia, S.C., for debtors.

Lawrence W. Johnson, Jr., Robinson, McFadden, Moore, Pope, Williams, Taylor & Brailsford, P.A., Columbia, S.C., for creditor.

## MEMORANDUM AND ORDER

J. BRATTON DAVIS, Bankruptcy Judge.

The matter before the court is the confirmation of the debtor in possession's Chapter 11 plan of reorganization.

The Federal Land Bank (FLB), a creditor, elected, under 11 U.S.C. § 1111(b)(2) [1], to have its entire claim treated as secured. The debtor in possession proposes to retain some of FLB's collateral for use in his farming operation and to return the remaining collateral.

Upon FLB's rejection of the debtor in possession's proposed treatment of its claim, the debtor in possession seeks to "cram down" FLB's claim pursuant to 11 U.S.C. § 1129(b)(2)(A)(iii) [2] by providing FLB with the "indubitable equivalent" of its claim.

## FACTS

The debtor in possession filed a petition for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101, *et seq.*) on December 3, 1984. On July 24, 1985 the court held a confirmation hearing at which the debtor in possession filed an amendment to the plan of reorganization. The plan, as amended, is before the court for confirmation.

FLB holds the debtor in possession's note for approximately $326,000. which is secured by a mortgage on the debtor in possession's realty. The debtor in possession's plan of reorganization proposes to treat FLB as follows:

| 1. Property to be deeded to FLB in fee simple | Appraised value |
| --- | --- |
| Parcel A, All | $ 91,500. |
| Parcel B, Woodlands | $ 15,000. |
| Timber crops on Parcels A and B | $ 53,360. |
| | $159,860. |

2. Guarantee Cash Flow:

| Present value of minimum lease payments plan discounted at 10.5%, 5 years with annual payment of $2,580. | $ 9,656.57 |
| --- | --- |

3. FLB will retain mortgage:

| Parcel B, 100 acres of cropland with improvements (including debtor in possession's residence) | $158,000. |
| --- | --- |
| Total value to be received or retained by FLB under plan | $327,516.57 |

1. 11 U.S.C. § 1111(b)(2) provides: If such an election is made, then notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed.

## FLB'S OBJECTIONS TO THE PLAN

FLB, objecting to the plan on three grounds, contends that:

1. The plan does not provide FLB with the "indubitable equivalent" of its claim.

2. The plan is not feasible.

3. The plan is not proposed in good faith.

## DISCUSSION

It is the duty of the court to examine the debtor in possession's proposed plan of reorganization in order to determine if it meets the requirements of § 1129. *In re N.S. Garrott & Sons*, 48 B.R. 13 (Bankr.E. D.Ark.1984); *see also, In re Stoffel*, 41 B.R. 390 (Bankr.D.Minn.1984); *In re White*, 41 B.R. 227 (Bankr.M.D.Tenn.1984). However, "the burden is on the debtor to prove the plan meets the fair and equitable standards by clear and convincing evidence." *Stoffel* at 392.

If the plan meets the requirements of § 1129, the court must confirm it; however, if the plan does not meet the requirements of § 1129, the court should not confirm it.

For a plan of reorganization under Chapter 11 to be confirmed the requirements of 11 U.S.C. § 1129 must be met. This section has eleven prerequisites for confirmation and all must be met except no. 8, which provides that each class must accept the plan or be unimpaired. A plan may still be confirmed over the objections of one or more classes if the plan nevertheless satisfies all of the other requirements of § 1129(a) and the cram down standards set forth in § 1129(b). The court has a mandatory duty to determine whether the plan has met all of the requirements for confirmation, whether specifically raised by dis-

2. Further references to the Bankruptcy Code are by section numbers only.

senting creditors or not. (citations omitted).

*N.S. Garrott & Sons,* at 15.

## I

*Does the plan provide FLB with the indubitable equivalent of its claim?*

Section 1129(b), which embraces the "cram down" provision for a class of secured claims, states:

\*　　\*　　\*　　\*　　\*　　\*

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

(A) With respect to a class of secured claims, the plan provides—

(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

The debtor in possession seeks to satisfy the requirements of this section by providing FLB with the "indubitable equivalent" of its claim. § 1129(b)(2)(A)(iii).

The term "indubitable equivalent" is derived from Judge Learned Hand's opinion in *In re Murel Holding Corp.,* 75 F.2d 941 (2nd Cir.1935). *In re Griffiths,* 27 B.R. 873, 8 C.B.C.2d 379 (Bankr.D.Kan.1983).

In *Murel* the court, when commenting on whether the creditor was adequately protected, stated:

It is plain that adequate protection must be completely compensatory; and that payment ten years hence is not generally the equivalent of payment now. Interest is indeed the common measure of the difference, but a creditor who fears the safety of his principal will scarcely be content with that; he wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior holders, unless by a substitute of the most indubitable equivalence.

*Murel* at 942.

The author of the legislative history to § 1129(a)(9)(A) notes that "a plan may be confirmed against a dissenting class of secured claims if the plan or order of confirmation provides for the realization of their security ... (3) by such other method that will assure them the realization of the indubitable equivalent of the allowed amount of their secured claims. The indubitable equivalent language is intended to follow the strict approach taken by Judge Learned Hand in the [sic] *In re Murel Holding Corp.*" (citations omitted).

The debtor in possession, in returning collateral and making cash payments on the collateral he retains, must provide FLB with a "substitute of the most indubitable equivalence." *Murel* at 942.

In *Griffiths,* the debtor in possession proposed returning some of the creditor's collateral and paying in cash the value of the collateral he retained. The court found that the plan did not give the creditor the "indubitable equivalent" of its claim because the payments were insufficient but made it clear that a debtor in possession may afford a creditor the "indubitable equivalent" of its claim by returning collateral and making cash payments. *See, In*

**94**

*re Elijah,* 41 B.R. 348 (Bankr.W.D.Mo. 1984).

The debtor in possession proposes to do this by giving FLB: (1) real property [3] valued at $159,860., (2) a guaranteed cash flow of $9,656.57 from the lease of FLB's land by the debtor in possession and (3) a new note for $158,000. secured by a mortgage on Parcel B.

It is not necessary to examine the proposed payments to determine whether they meet the test set out in *Griffiths* because the plan is fraught with other problems which preclude its providing FLB the "indubitable equivalent" of its claim.

■ First, the debtor in possession's proposal to return land to FLB requires, as part of the plan, FLB's leasing the land back to the debtor in possession for up to five years in one year terms. Although the parties have stipulated the values of the land, the stipulation does not take into consideration *the value* of the land *with an annual lease,* of up to five years, on it as provided in the plan. Inasmuch as the value of the land will be burdened by the lease, this court finds that the value of the property is less than the stipulated value.

■ Second, in attempting to afford FLB the "indubitable equivalent" of its claim, the debtor in possession proposes to include the lease payments he makes to FLB on the returned property. Regardless of whether the lease payments are reasonable in amount, FLB, as the owner of the property once it is returned, would be *entitled* to a fair rental for the use of its land. By leasing the returned property the debtor in possession would not be giving FLB anything which it would not already be entitled to receive as the owner of the land. Thus, the proposed lease payments should not be included as part of the "indubitable equivalent" of FLB's claim.

■ FLB is not afforded the "indubitable equivalent" of its claim because, as an electing creditor (see page 92), it is entitled to the "indubitable equivalent" of approxi-

mately $326,000., whereas, it is being offered a value less than $317,860. If the debtor in possession's plan were confirmed and he were unable to consummate it, FLB would be limited to a $158,000. note and mortgage. FLB is entitled to the benefits of any appreciation of its collateral up to $326,000.—the amount of its original note and mortgage. However, the debtor in possession's acceptable offer is only a $158,000. note and mortgage plus property worth *less than* $159,860.—totalling *less than* $317,860. The consequence of this offer is FLB's receiving (if the plan were confirmed containing the lease-back proposal) at least $8,140. less than the "indubitable equivalent" of its claim. That is why the plan should not be confirmed.

Third, the plan provides:

If there results any deficiency balance from the provisions above, the debtor will execute a note for that deficiency based on the total allowed FLBK claim. This will be a non recourse, non interest bearing note secured by all property of the debtor, except the debtor's residence and five adjacent acres.

■ This catch-all provision does not satisfy the court that FLB will receive the "indubitable equivalent" of its claim. The plan does not state which property will be mortgaged to FLB or the priority to be given that mortgage.

While it is difficult to define what may be the 'indubitable equivalent' of a secured claim, it is possible to define with certitude the possible treatment of secured claims which would not constitute 'indubitable equivalence.' For example, distribution of notes or securities which are not secured by a lien on property of equivalent value to the secured creditors' collateral does not satisfy the test. Similarly treatment which is less favorable than the treatment specified in section 1129(b)(2)(A)(i) and (ii) would not satisfy the test.

5 *Collier on Bankruptcy* ¶ 1129.03, p. 1129–56 (15th ed. 1985).

---

**3.** The court assumes that these values were stipulated by counsel.

The court is not convinced that the debtor in possession could provide FLB with "property of equivalent value to the secured creditors' collateral." *Collier* at 1129–56.

## II

In light of the court's ruling on the first of FLB's objections, it is not necessary to consider the two remaining objections.

## ORDER

Inasmuch as the debtor in possession has failed to meet his burden of providing FLB, an electing creditor under § 1111(b), with the "indubitable equivalent" of its claim as required by § 1129(b)(2)(A)(iii), confirmation of the Chapter 11 plan of reorganization, as amended on July 24, 1985, is denied.

AND IT IS SO ORDERED.