## 40796. ESCOE v. JOHNSON et al.

DECIDED SEPTEMBER 11, 1964.

*Guy B. Scott, Jr.,* for plaintiff in error.
*Stark & Stark, Homer M. Stark, Jim Hudson,* contra.

FELTON, Chief Judge. "The line of demarcation between an employment and a partnership, where one of the parties contributes services rather than capital, and is merely to receive a share in the profits, is close and often depends on differences in the particular facts, rather than rules of law." *McMillan v. Gilmour,* 49 Ga. App. 400, 401 (175 SE 672) and cit.

The following evidence was adduced at the trial: The defendants jointly leased the land on which the store was situated from Mrs. Frances Crymes for a consideration of 4% of the gross receipts of the business, as appeared from a copy of the lease attached as an exhibit to the petition. Defendant Johnson testified as follows: That he was in the real estate and contracting business; that he erected the store building on the leased premises at his own expense (around $4,000); that he owned various properties in the neighborhood of the package store and had signed the lease to protect the equity he had in the building; that his agreement with the co-defendant, McNaughton, was that he was to pay McNaughton $60 per week, McNaughton was to pay him 50% of the balance of the net profits and Johnson was not to be liable for the debts that McNaughton made, that, in addition to the building, he put up $1,000 to stock the store with merchandise, which he considered to be a loan, which was later

repaid; that McNaughton contributed nothing but his time in the operation of the business; that he got his $1,000 for the original merchandise back plus $500 in profits and that was all; that he considered the payment of 50% of the profits to be for his investment in the building; that he had no intention of operating the business; that he didn't stay around the store; that the license was not in his name but solely in McNaughton's name, as shown by copies of the business licenses introduced in evidence; that the only person who knew he was involved in the business at all was the lessor, Mrs. Crymes; that he had never obtained a license to operate a beer store, had never had his name on a checking account where he could draw checks on the store's banking account, had never drawn a check on the store's account, had never employed a bookkeeper to look after the business and had nothing at all to do with the operation of the business; that sometime in 1962 he wasn't getting anything out of the business and the State was attempting to padlock the store for nonpayment of State sales tax; that he talked the State out of closing the business, but that it was hard because he had nothing to show that he had anything to do with the business; that he had never seen the business' books prior to this time and that, after McNaughton authorized him to see them, the only way the auditors would let him see them was to pay what McNaughton owed; that he had to pay the auditors over $100 for their work; that he then put the store in his wife's name so they could recover the loss; that she paid him about $3,200 in cash for the stock on hand, paid the back sales taxes, and ran the store until the first of the year, whereupon the lessor, Mrs. Crymes took over and bought the cooling equipment and the stock of merchandise on hand.

The plaintiff testified that he is and was during 1962 licensed by the State as a wholesaler of malt beverages and sole owner of E. and E. Distributing Co.; that all four of the checks sued on were received for merchandise delivered to the store and all were returned for insufficient funds; that he didn't receive any money on them and did not get the merchandise back; that when he received the checks back he redeposited them as requested by McNaughton, but they still were not honored; that he had

notified the State Revenue Department about the checks and that McNaughton had been put on 6 months probation by the State Commission commencing on June 16, 1962; that one of the checks, for $700, was for merchandise already delivered and was to replace one of the checks returned for insufficient funds; that he had first met defendant Johnson when the store was initially opened and that he had seldom seen him since then; that he had never seen Mrs. Johnson; that McNaughton gave him all checks until he went out of business, then Mr. Johnson gave him checks, but they were drawn by Mrs. Johnson, never by Mr. Johnson; that he had seen the lease between Mrs. Crymes and the defendants and had been told that the defendants were partners by McNaughton and Mrs. Crymes; that he had loaned McNaughton some money to build his merchandise back up; that he had never told Mr. Johnson that the checks had bounced—that he "didn't have a chance" because he never saw him and he always figured that McNaughton was Mr. Johnson's agent.

Code § 75-102 provides as follows: "A joint interest in the partnership property, or joint interest in the profits and losses of the business, shall constitute a partnership as to third persons. A common interest in profits alone shall not." "It is settled in Georgia that, where one of the parties to an agreement has only an interest in the net profits and no interest in or liability for (as among the contracting parties) the losses of the enterprise, he is not, even as to third parties, a partner." *Evans Motors &c., Inc. v. Hamilton,* 82 Ga. App. 735, 739 (62 SE2d 390) and cit. There was uncontradicted evidence that the agreement was that defendant Johnson was not to be liable for defendant McNaughton's debts and, while the evidence showed that he did in fact pay these debts, he testified that this was done so that he could continue the operation of the store and recoup his losses. The evidence does not show that he was legally obligated to pay the debts.

Furthermore, there is sufficient evidence to authorize the finding that there was no partnership intended or created by operation of law. McNaughton contributed nothing but his services and time, whereas to create a partnership the parties thereto must put into the enterprise property, money, or other

thing of value, *other than mere personal services. West Lumber Co. v. Candler*, 46 Ga. App. 408 (1) (167 SE 766). Although the defendants were co-lessees of the land on which the store was situated, defendant Johnson owned the actual building and, when the business was about to be shut down for nonpayment of taxes, he exercised such dominion over the property as would indicate that it was not a partnership, but rather some other relationship, such as lessor-lessee, employer-employee, or principal-agent. An arrangement similar to the present one, in which one of the parties was bound for the payment of a certain unconditional minimum amount plus an additional amount conditioned upon the volume of business or profits, was held to have authorized the finding that the person who occupied McNaughton's position was an independent operator rather than a partner. If the defendants be considered lessor and lessee, they are not copartners merely because the lessor may have an indirect interest in the success of the lessee's business in order that his claim for rent may be met. *West Lumber Co. v. Candler*, 46 Ga. App. 408 (2), supra.

Although the question of what will constitute a partnership is a matter of law for the court, in the absence of an unambiguous contract of partnership or of any written articles of partnership it is a question of fact for the jury to decide, under proper instruction from the court, whether the intention of the parties was to become partners and whether a partnership existed as to third parties at the times in question. 68 CJS 475, Partnership, § 57. There was evidence to support the jury's finding that no partnership existed as to the plaintiff, therefore the court did not err in overruling the motion for judgment n.o.v. and the motion for new trial on the general grounds.

*Judgment affirmed. Frankum and Pannell, JJ., concur.*