**TRAVELERS INSURANCE COMPANY,**
**Plaintiff–Appellant,**

v.

**Donald H. BULLINGTON d/b/a Bullington Farms, Defendant–Appellee,**

**TRAVELERS INSURANCE COMPANY,**
**Plaintiff–Appellant,**

v.

**John T. BULLINGTON, d/b/a Bullington Farms, Defendant–Appellee.**

No. 88–8549.

United States Court of Appeals,
Eleventh Circuit.

July 21, 1989.

Fife M. Whiteside, P.C., Columbus, Ga., for defendant-appellee.

C. Edward Dobbs, Rufus T. Dorsey, IV, Parker, Hudson, Rainer and Dobbs, Atlanta, Ga., for plaintiff-appellant.

Before KRAVITCH and COX, Circuit Judges, and MORGAN, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

This is an appeal by Travelers Insurance Co. from an order affirming the bankruptcy court's confirmation of plan under Chapter 12 (Family Farmer) of the bankruptcy code. 89 B.R. 1010. We affirm.

The Bullingtons were brothers who, together with their now-deceased father, operated their individual farms in a constructive partnership. Because of this the bankruptcy court effectively consolidated their individual petitions for Chapter 12 bankruptcy and their virtually identical reorganization plans are treated as one. [hereinafter the "plan"]

In February of 1985 the Bullingtons took out a mortgage from appellant on certain of their farm properties. It was a balloon-type mortgage under which the Bullingtons received $520,000 and were to pay interest (but no principal) in semi-annual installments for the first four years, and then the entire amount of the principal would be due in February of 1990. The interest rate was fixed at 12½% for the first year; the rate then floated at one point above an index of AAA corporate bonds. The mortgage was secured by land and certain fixtures (pumps, motors, etc.). The Bullingtons used the funds from the mortgage loan in their farming operations.

In November of 1986 Congress enacted Chapter 12 of the bankruptcy code to provide special relief for family farmers.

In January, 1987 the Bullingtons petitioned for bankruptcy under Chapter 12. As of the date of the petition, the Bullingtons' debt to Travelers Insurance was $645,929.77, with interest accruing at $300

per day. The value of the land that secured the Travelers loan was stipulated to be $475,000.

The plan, submitted by the Bullingtons and approved over the objections of Travelers, split Travelers claim into two parts: a secured claim of $475,000 (the stipulated value of the collateral) and an unsecured claim of $170,000 representing the remainder. The plan converted the five-year floating-rate mortgage into a $475,000 thirty-year fixed-rate mortgage. The court set the interest rate on the mortgage at 10.75%. The unsecured claim of $170,000 would be treated as any unsecured claim: the Debtors' entire disposable income (if any) would be used over the four-year term of the plan to pay each unsecured claim on a pro rata basis. At the end of the four years of the plan, any part of the unsecured debt that had not been paid off would be discharged.

Travelers appealed the bankruptcy court's order to the district court raising, inter alia, statutory and constitutional issues. The district court affirmed [1] and this appeal ensued. We address each issue in turn.

Unlike Chapter 11, secured creditors in Chapter 12 do not "vote" on a plan. Instead, section 1225 provides that the bankruptcy court "shall" approve the plan if one of three conditions are met in the plan: [2]

with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B) (i) the plan provides that the holder of such claim retain the lien securing such claim; *and*

(ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less that the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder;

. . .

Because Travelers did not accept the plan, section 1225(a)(5)(A) does not apply. Under § 1225(a)(5)(C) the court may also approve a plan if the debtor surrenders the property subject to the lien, i.e., forfeits the land. Here debtors have not done so, thus our focus is on section 1225(a)(5)(B). [3]

Travelers does not suggest that the plan fails under section 1225(a)(5)(B)(i), which requires that the plan give the creditor a lien in the amount of his secured claim. The allowed secured claim here is $475,000 (the stipulated value of the property) and the plan gives a lien in that amount, so this requirement is satisfied.

Travelers argues, however, that the plan fails to meet the requirements of section 1225(a)(5)(B)(ii) because it stretches out the payments for thirty years and because Travelers does not receive sufficient "value" under the plan.

1. *Does 11 U.S.C. § 1225 prohibit a thirty-year payout to an objecting secured creditor?*

■ Travelers first objection is that the plan's thirty-year mortgage violates section 1225(a)(5)(B)(ii). Travelers reasons as follows: section 1225(a)(5)(B)(ii) requires that the value of the property distributed under the plan be not less than the allowed amount of the claim, and that it be distrib-

---

**1.** In the course of the proceedings the plan was amended slightly, but none of the amendments have anything to do with this appeal.

**2.** Section 1225 provides in part:
(a) Except as provided in subsection (b), the court shall confirm a plan if—
(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;
(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;
(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date

**3.** The plan does call for the debtors to surrender the personal property collateral, but does not provide for them to forfeit the real property.

uted "under the plan." Yet section 1222(c) provides that—subject to only two exceptions—payments under a plan may never exceed five years. Thus, Travelers suggests that because the thirty-year rescheduled mortgage is longer than five years, the plan violates the code.

Travelers argument is colorable, but it ignores the two express exceptions to section 1222(c) that permit payments to exceed five years. Section 1222(c) provides as follows:

> Except as provided in subsections (b)(5) and (b)(9), the plan may not provide for payments over a period that is longer than three years unless the court for cause approves a longer period, but the court may not approve a period that is longer than five years.

Section 1222(b)(5), the first exception to the section 1222(c) five-year limit, permits a debtor to reinstate an old debt (cure default), and is not applicable to this appeal. Section 1222(b)(9), however, has direct bearing on this case:

> [the plan may] provide for payment of allowed secured claims consistent with section 1225(a)(5) of this title, over a period exceeding the period permitted under section 1222(c).

Thus, section 1222(b)(9), as an express exception to the section 1222(c) five-year limit, permits payments under a plan to extend over five years, but only when "consistent with section 1225(a)(5)."

We find section 1222(b)(9) explicit and dispositive of Travelers' objection: a plan may provide for a payout period greater than five years, provided that it is "consistent with section 1225(a)(5)." Travelers' argument that payments under a plan can never exceed five years would render section 1222(b)(9) a nullity. Thus, the mere fact that the plan provides for a thirty-year payment of Travelers' allowed secured claim does not violate section 1225.

2. *Does the plan provide a present "value" to the creditor not less than the allowed amount of such claim" as section 1225(a)(5)(B)(ii) requires?*

█ Travelers next argues that the plan does not give it the full value of its allowed secured claim as § 1225(a)(5)(B)(ii) requires. Travelers frames this objection in two ways. First, Travelers stresses that to satisfy this section it must receive value equal to its allowed secured claim "under the plan." Arguing that under the plan means the same as "during the plan," Travelers concludes that the four-year length of the plan that the bankruptcy court confirmed is the proper time frame in which to apply the section 1225(a)(5)(B)(ii) "value" test, i.e., Travelers would have us total up the payments it is to receive over these four years, and if that amount is less than the $475,000 amount of its allowed secured loan, then the plan fails.

This objection need not detain us long. Section 1225(a)(5)(B)(ii) explicitly directs that the "value" is to be determined "as of the *effective date of the plan.*" (emphasis added) Under this section, therefore, we do not total the payments received "during the plan." Instead, the test is simply whether, as of the effective date of the plan, the present value of the property distributed—i.e., the new thirty-year mortgage—is equal to or greater than the amount of the allowed secured claim.

In addition to its argument that the value it receives under section 1225(a)(5)(B)(ii) must be within the term of the plan, Travelers also argues that the thirty-year mortgage itself is not of sufficient value.

Travelers frames this issue in terms of burdens of proof. Travelers asserts that there is insufficient proof to show that a thirty-year 10.75% mortgage is of a value not less than the allowed secured claim of 475,000. From a pure finance perspective, all Travelers seems to be saying is that the term of the mortgage is too long and/or the interest rate is too low.

The debtors presented to the district court a chart of then-current interest rate returns, which tends to support a finding that a 10.75% interest rate on a thirty-year mortgage is within the range of market rates. Travelers, on the other hand, presented no *objective* evidence to demonstrate that the term or interest rate of the

mortgage was such that its present value did not equal or exceed $475,000.

Travelers put on a witness who testified that Travelers itself would never lend for a period longer than twenty years, and if it did it would be at a somewhat higher rate of interest. Yet this testimony regarding Travelers' subjective valuation does not sufficiently undermine the bankruptcy courts' implicit factual finding that the present value of the mortgage as of the effective date of the plan was not less than the value of the allowed secured claim.

"Value" must be determined objectively. Simply because a creditor subjectively would not extend a mortgage on the same terms does not mean that objectively the mortgage does not have a given value. Given that Travelers has pointed to no record evidence to show that the 10.75% interest rate does give the mortgage a present value of $475,000, while the debtors' chart does tend to support that interest rate, the bankruptcy court's finding that the thirty-year mortgage at 10.75% annual interest rate has a present value not less than the $475,000 value of Travelers' allowed secured claim is supported by sufficient evidence.

### 3. Did the debtors prove the feasibility of the plan as § 1225(a)(6) requires?

■ Travelers also argues that the debtors failed to demonstrate that the plan was feasible, as section 1225(a)(6) requires.

Travelers attacks the bankruptcy court's finding that the plan was feasible by making essentially evidentiary objections. The main objection is that the court apparently relied upon computer projections based on underlying data that has been lost. The debtors gave historical data concerning their farming operations to a government agency (Georgia Extension Service or "GES") which used this information as well as other information from its own data

collection efforts and developed a computer projection of the farms' yield. Unfortunately, the debtors' farm data was destroyed in a fire. Travelers, therefore, argues that the GES projections are unreliable hearsay because we can no longer examine the underlying data.

Evidentiary questions such as this are left to the discretion of the bankruptcy court. Thus, we apply an abuse of discretion standard to the court's decision to admit the GES projections.

Because the fire destroyed the Bullingtons' farm data there is no question that the Bullingtons were not able to produce the data. The court admitted the GES projections as *opinion of the debtor*. The court has such power under rule 701 (opinion testimony by lay witness). We cannot say that the court's decision to admit the projections as opinion testimony was an abuse of discretion.

Given that there was no evidence that the debtors' plan was *not* feasible, and given that the GES projections support the conclusion that the plan was feasible, we cannot say that the court erred in determining under section 1225(a)(6) that the plan was feasible.

### 4. Does Chapter 12 constitute an unconstitutional taking of property without due process?

■ No circuit has yet addressed the constitutionality of Chapter 12 of the bankruptcy code. The courts that have addressed it have found no unconstitutional taking of property.[4] We conclude that the operation of Chapter 12 of the Bankruptcy Code does not operate as an unconstitutional taking of appellant's property.

To put the takings issue in perspective, it is useful to consider the differing treatment of unsecured and secured claims. When the debtors petitioned for bankruptcy they owed Travelers $645,000 but their

---

**4.** Two district courts have addressed this issue, and in well-reasoned opinions have upheld Chapter 12 against constitutional challenges.

*See Dahlke v. Doering,* 94 B.R. 569 (D.C.Minn. 1989); *Albaugh v. Terrell,* 93 B.R. 115 (E.D. Mich.1988).

collateral was worth only $475,000. Under section 506, Travelers' claim was split into a secured claim in the amount of their collateral, and an unsecured claim for the remainder.[5]

As we discussed above, section 1225(a)(5) permitted the court to confirm the plan over the objections of Travelers provided that the value of the new mortgage Travelers received under the plan was not less than the amount of its allowed secured claim—i.e., the $475,000 value of the collateral. Because we affirm the finding that the new mortgage Travelers received under the plan satisfied the requirements of section 1225(a)(5), there is no taking of property with respect to the value of the collateral. The 10.75% interest will adequately compensate Travelers for the longer term of the mortgage.

The plan provided for the debtors to devote for four years all of their disposable income to the satisfaction of the unsecured claims. If we assume *arguendo* that the debtors have no disposable income for the four years of the plan, it may be that the entire $170,000 amount that Travelers's loan was undersecured will be discharged. Where Travelers once had a security interest it may conceivably end up with nothing.

Thus, our takings analysis focuses solely on the amount that the original debt was undersecured.

It is undisputed that the takings clause of the fifth amendment protects certain of the rights of secured creditors. *See Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) (Frazier–Lemke Act).[6] However, as the Court has observed in *Wright v. Union Central Life Insurance Co.,* 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940), "[these] safeguards were provided to protect the rights of secured creditors ... to the extent of the value of the property. There is no constitutional claim of the creditor to more than that." 311 U.S. at 278, 61 S.Ct. at 199–200. A recent pronouncement of the Court in a closely related area of bankruptcy law reflects the same view. *See United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988) (construing section 506(a) "value of such creditor's interest" as "value of the collateral").

In light of the principle that the takings clause of the fifth amendment protects the secured creditor only to the extent of the value of the collateral, section 1225 with-

**5.** § 506. Determination of secured status

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

(c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(d)(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(d)(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

**6.** "[T]he famous statement that the bankruptcy power is subject to the fifth amendment must be taken to mean nothing more than that the fifth amendment, through either the due process clause or the takings clause, is the constitutional foundation for the proposition that statutes that retroactively disrupt settled expectations may be subject to particularly attentive judicial scrutiny." James S. Rogers, *The Impairment of Secured Creditors' Rights in Reorganization: A Study of the Relationship Between the Fifth Amendment and the Bankruptcy Clause,* 96 Harv.L.Rev. 973, 985 (1983).

stands appellant's constitutional challenge.[7] Section 1225(a)(5) ensures that the creditor receives value not less than the amount of his allowed secured claim, i.e., the value of the collateral.

### 5. *Does Chapter 12 apply retroactively?*

 Travelers also makes an argument that Chapter 12 should not apply to obligations existing before Congress enacted Chapter 12. Although we will not automatically give bankruptcy laws retroactive effect, *United States v. Security Industrial Bank*, 459 U.S. 70, 82, 103 S.Ct. 407, 414, 74 L.Ed.2d 235 (1982), where it is clear from the language or legislative history of a statute that Congress intended the law to apply retroactively then we must follow Congress's intent.

We have no doubt that Congress intended the provisions of Chapter 12 to apply to debts incurred before its enactment. Although Chapter 12 does not explicitly state that it is to be applied retroactively, any contrary view would render Chapter 12 a triviality. Chapter 12 was enacted as an emergency response to a then-existing farm debt crisis. As Judge Rosenbaum has noted:

> Congress intended the family farmer provisions to be novel, but short-lived. The statute by its terms expires after only seven years. 28 U.S.C. § 581 note. The short lifetime of Chapter 12 suited Congress' desire to 'evaluate both whether the chapter is serving its purpose and whether there is a continuing need for a special chapter for the family farmer.' H.R.Conf.R. at 48, USCCAN at 5249. Common sense suggests Congress was mindful of the farmer' existing loans when it set the seven year limitation.

*Dahlke v. Doering*, 94 B.R. 569 (D.Minn. 1989).

Accordingly, we reject appellants' statutory and constitutional challenges, and AFFIRM the order of the district court affirming the bankruptcy court's confirmation of the debtors' plan for reorganization.

---

**7.** Such a rule is fully consistent with common sense. Had Travelers foreclosed on the farm property all it could have obtained would be the $475,000 stipulated value. Under Chapter 12, the reason Travelers may not recover the remaining amount of their claim is because the claim was undersecured.