**In the Matter of LLL FARMS, Debtor.**

**Bankruptcy No. 89–51405.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

March 16, 1990.

Ben F. Easterlin, IV, Americus, Ga., for debtor.

George H. Myshrall, Jr., Atlanta, Ga., for Georgia Development Authority.

Walter Kelley, Albany, Ga., Chapter 12 trustee.

ROBERT F. HERSHNER, Jr., Chief Judge.

## MEMORANDUM OPINION

LLL Farms, a Partnership, Debtor, filed a petition under Chapter 12 of the Bankruptcy Code on June 5, 1989. Debtor filed its Chapter 12 plan on November 6, 1989. Debtor filed an amendment to its Chapter 12 plan on January 17, 1990. Georgia Development Authority (Georgia Development) filed an objection to confirmation on January 2, 1990. A hearing was held on

confirmation of Debtor's plan and Georgia Development's objection on January 9, 1990. The hearing was continued to and concluded on January 17, 1990. The Court, after considering the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

Debtor is a general partnership composed of three sisters, each with a one-third interest. The partnership business is farming. The partners are Louise W. Veal, LaWanda W. Davis, and Lynn W. Martin. The sisters do not live on the farm property and do not farm the land themselves. Each has an outside job not associated with the farm. In October 1986, the sisters applied to Georgia Development for a farm loan. The purpose of the loan was to purchase 124.76 acres of land in Crisp County, Georgia. On January 23, 1987, the sisters signed a promissory note and deed to secure debt in favor of Georgia Development for $94,000. The loan application, promissory note, and deed to secure debt were signed by the sisters as individuals. They contend, however, that they were acting as a partnership.

The loan was to be repaid in twenty annual installments due on January 1 of each year. The first installment was due on January 1, 1988. The promissory note provides for variable rates of interest. Annual adjustments to the interest rate are determined by the Prime Rate.[1]

Debtor defaulted on the first payment due January 1, 1988. Debtor also failed to make the 1989 and 1990 payments. Georgia Development accelerated the promissory note and began foreclosure proceedings. Debtor filed its bankruptcy petition the day before the foreclosure sale was to be held.

Debtor's plan proposes to repay the debt to Georgia Development in annual installments of $13,805.20 payable on December 31 of each year. The first payment is due on December 31, 1990. The plan provides for a fixed rate of interest of 10.2 percent.[2]

1. The promissory note provides that the Prime Rate shall be the Prime Rate of interest announced by The Citizens and Southern National Bank, Atlanta, Georgia.

2. Debtor shows that this interest rate is the current yield plus 2% on United States Treasury Bonds maturing in 15 years.

The repayment term is thirty years. Georgia Development would retain its lien on Debtor's property until the debt is paid in full.

Debtor will fund its plan through farm income and rent from a house on the farm. Debtor intends to grow peanuts, raise cattle, feed-out livestock for other farmers, and plant pine trees. The sisters' father will live in and rent the farm house for $300 per month.[3] Louise W. Veal testified that each sister will contribute $1,500 of personal money to fund any deficiency under the plan.

Georgia Development holds a fully secured claim in the amount of $127,716.29 as of December 31, 1989. Interest is accruing on this loan at $39.79 per day. The security is 157 acres in Crisp County, Georgia. This includes 124.76 acres which the sisters purchased with the Georgia Development loan and three plots of ten acres each which the sisters own as individuals.

Georgia Development objects to confirmation of Debtor's plan on three grounds. First, Georgia Development contends that Debtor is not eligible for relief under Chapter 12 because Debtor is not a "family farmer."[4] Second, Georgia Development contends that Debtor's plan fails to pay present value on its secured claim as required by section 1225(a)(5)(B) of the Bankruptcy Code.[5] Finally, Georgia Development contends that the purposed thirty-year repayment term is too long because it exceeds the maximum term for which Georgia Development can make a loan.

The first issue is whether Debtor qualifies as a "family farmer." Georgia Development shows that the loan application, promissory note, and deed to secure debt were signed by the three sisters as individuals. Georgia Development questions whether Debtor is a partnership. The sisters assert that Georgia Development knew

that they were acting as a partnership. In *Hayes v. Irwin,*[6] the United States District Court for the Northern District of Georgia stated:

> Generally speaking, a partnership is a voluntary agreement between two or more persons to contribute their money, property, or skill to the operation of a joint business or common enterprise for their common benefit and to divide the profits and bear the losses in certain proportions. *See Floyd v. Kicklighter,* 139 Ga. 133, 76 S.E. 1011 (1912); *Escoe v. Johnson,* 110 Ga.App. 252, 138 S.E.2d 330 (1964); *Russell v. Strain,* 69 Ga.App. 654, 26 S.E.2d 460 (1943). A partnership may be created for a single venture or enterprise. An agreement to form a partnership need not be in writing, for the true determinant of a partnership is the objective intent of the parties involved. The language which is used is a primary factor in determining the intent of the parties with respect to any agreement, and when ascertained, it will prevail over all other considerations. *Chalkley v. Ward,* 119 Ga.App. 227, 166 S.E.2d 748 (1969). *See also Kennedy v. Thruway Service City, Inc.,* 133 Ga.App. 858, 212 S.E.2d 492 (1975).

541 F.Supp. at 415.

██ The sisters agreed to purchase and operate the farm as a joint business for their common benefit and goals. The Court is persuaded that Debtor is a partnership. Georgia Development asserts that it would not have made a loan to just one of the sisters. Georgia Development knew that the sisters had outside jobs and would not actually "work the land" themselves. Georgia Development made its loan to the sisters based on their collective assets and abilities to repay. The Court is persuaded that Georgia Development dealt with the sisters collectively rather than in-

---

3. Louise W. Veal testified that their father intended originally to help operate the farm, but has not been able to because of poor health.

4. *See* 11 U.S.C.A. § 109(f) (West Supp.1989). This section provides: "Only a family farmer with regular annual income may be a debtor under chapter 12 of this title."

5. 11 U.S.C.A. § 1225(a)(5)(B) (West Supp.1989).

6. 541 F.Supp. 397 (N.D.Ga.1982), *aff'd,* 729 F.2d 1466 (11th Cir.), *cert. denied,* 469 U.S. 857, 105 S.Ct. 185, 83 L.Ed.2d 119 (1984).

dividually. Georgia Development should therefore not complain about the existence of the partnership.

■ Section 101(17)(B) of the Bankruptcy Code[7] provides:

(17) "family farmer" means—

. . . .

(B) corporation or partnership in which more than 50 percent of the outstanding stock or equity is held by one family, or by one family and the relatives of the members of such family, and such family or such relatives conduct the farming operation, and

(i) more than 80 percent of the value of its assets consists of assets related to the farming operation;

(ii) its aggregate debts do not exceed $1,500,000 and not less than 80 percent of its aggregate noncontingent, liquidated debts (excluding a debt for one dwelling which is owned by such corporation or partnership and which a shareholder or partner maintains as a principal residence, unless such debt arises out of a farming operation), on the date the case is filed, arise out of the farming operation owned or operated by such corporation or such partnership; and

(iii) if such corporation issues stock, such stock is not publicly traded;

11 U.S.C.A. § 101(17)(B) (West Supp.1989).

All of Debtor's equity is owned by three sisters. The sisters are all related, and one of the sister's son conducts the farming operation. *See In re Schaurer Agricultural Enterprises,* 82 B.R. 911, 912 (Bankr.S.D.Ohio 1988) (partnership farming business owned by two brothers qualifies as a Chapter 12 family farmer).

Debtor scheduled its only asset as 157 acres of real property in Crisp County, Georgia. The market value is at least $127,716.29[8]. Louise W. Veal testified

that the farm house is insured for $60,000. Georgia Development does not contend that the house is an asset not related to the farming operation. Furthermore, the farm house was on the property when Georgia Development extended the loan. Its value helps to fully secure Georgia Development's claim. Debtor's aggregate debts do not exceed $1,500,000, and all of its debts arise out of the farming operation.

The Court is persuaded that Debtor's business is a "farming operation."[9] Debtor plants crops and raises livestock. These are certainly traditional farming operations. The majority of the 157 acres is devoted to the farming operation.

The eligibility issue turns on whether Debtor, through its partners, conducts the farming operation. The sisters do not live on the farm property and do not perform the actual farm labor. Louise W. Veal, however, testified that her twenty-five-year-old son and his two full-time helpers will farm the land. He is a full-time farmer and will work about one day per week on the partnership farm.

All three sisters have outside jobs. The majority of their income comes from nonfarming operations. The Court is persuaded, however, that this is a common practice in farming. The Georgia Department of Agriculture recently stated:

A study by agricultural economists at the University of Georgia shows that Georgia farmers increasingly rely on off-farm employment. A 1983 USDA study showed that between 47 percent and 66 percent of Georgia farm family income came from outside employment; now experts say that figure is increasing.

*Farmers & Consumers Market Bulletin,* Vol. 77, No. 4, January 31, 1990, at 1, col. 4. *See also In re Schaurer Agricultural Enterprises,* 82 B.R. at 913 (Congress intended to protect the family farmer entity in

7. 11 U.S.C.A. § 101(17)(B) (West Supp.1989).

8. Debtor and Georgia Development entered into a consent order showing that Georgia Development is fully secured for this amount.

9. *See* 11 U.S.C.A. § 101(20) (West Supp.1989). This section provides:

(20) "farming operation" includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state;

which one or a small number of the entire family is engaged in the farming operation while other members of the family have ownership, but substantial other nonfarm income to sustain themselves).

Louise W. Veal testified that the sisters purchased and operate the farm for their father. The Court is persuaded that the farm is not simply a tax shelter, but is the kind of operation which Congress intended to help through Chapter 12. The Court finds that Debtor is eligible for relief under Chapter 12 of the Bankruptcy Code.

Georgia Development contends that Debtor's plan fails to pay present value on its fully secured claim. Debtor proposes to pay interest at the rate of 10.2 percent. David Skinner, president and chief executive officer of Georgia Development, testified that Georgia Development's present cost of funds is eleven-and-one-half percent. He testified that if Georgia Development remade a loan to Debtor that the interest rate would be Prime Rate plus two or three percent. He testified that Georgia Development cannot make a loan for a term exceeding twenty years. Mr. Skinner testified that the Farm Credit Administration, a tax supported lender of last resort, can make a thirty-year loan with a variable interest rate of Prime plus two or two-and-one-half percent.

Section 1225(a)(5) of the Bankruptcy Code provides that Georgia Development's allowed secured claim can be treated in one of three ways. Section 1225(a)(5) provides:

> (5) with respect to each allowed secured claim provided for by the plan—
> (A) the holder of such claim has accepted the plan;
> (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
> (ii) the value, as of the effective date of the plan, of property to be distribut-

ed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or
> (C) the debtor surrenders the property securing such claim to such holder; and

11 U.S.C.A. § 1225(a)(5) (West Supp.1989).

Georgia Development has not accepted Debtor's plan. Debtor does not intend to surrender the property to Georgia Development. Debtor, therefore, must pay Georgia Development the value of its allowed secured claim.

■ Under this "cram down" provision, Debtor's payments to Georgia Development must have a present value equal to the allowed secured claim. The purpose of the present value requirement is to compensate Georgia Development for the delay in receiving payment of its allowed secured claim. Bankruptcy courts have almost uniformly agreed that the proper method of providing creditors with the equivalent of the value of their claim is to require the debtor to pay interest on the claim throughout the payment period. There is no consensus among the courts on what constitutes an appropriate rate of interest. This Court has held, however, that the contract rate is not the appropriate rate of interest for present value purposes. *Warehouse Home Furnishings Distributors, Inc. v. Richards (In re Richards)*, 106 B.R. 762, 763, 766 (Bankr.M.D.Ga.1989).[10]

In *United States v. Southern States Motor Inns, Inc. (In re Southern States Motor Inns, Inc.)*,[11] the United States Court of Appeals for the Eleventh Circuit stated:

> We believe Congress intended that creditors required to accept deferred payments pursuant to § 1129(a)(9)(C) should be placed in as good a position as they would have been had the present value of their claims been paid immediately.

---

**10.** Although *In re Richards* was a Chapter 13 case, several courts have noted that the "value, as of the effective date of the plan" provision in 11 U.S.C.A. §§ 1129(b)(2)(A)(i)(II), 1129(a)(9)(C), 1225(a)(5)(B)(ii) and 1325(a)(5)(B)(ii) are essentially identical and have similarly construed the sections. *See United States v. Arnold*, 878 F.2d 925, 929 (6th Cir. 1989); *United States v. Southern States Motor Inns, Inc. (In re Southern States Motor Inns,*

*Inc.),* 709 F.2d 647, 652 (11th Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984); *In re Corley,* 83 B.R. 848, 851 (Bankr.S.D.Ga.1988); *In re Benford,* 14 B.R. 157, 160 (Bankr.W.D.Ky.1981).

**11.** 709 F.2d 647 (11th Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984).

Consequently, we hold that the interest rate to be used in computing present value of a claim pursuant to § 1129(a)(9)(C) should be the current market rate without any reduction for the "rehabilitation aspects" of the plan. 709 F.2d at 652–53.

The Eleventh Circuit also stated:

> The factors relevant to determining an appropriate interest rate are succinctly summarized in 5 Collier on Bankruptcy ¶ 1129.03, at 1129–65 (15th ed.1982):
>
> > The appropriate discount [interest] rate must be determined on the basis of the rate of interest which is reasonable in light of the risks involved. Thus, in determining the discount [interest] rate, the court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration of the quality of the security and the risk of subsequent default.

709 F.2d at 651.

■ Georgia Development asserts that it would not remake this loan to Debtor because it considers Debtor a poor risk. Georgia Development asserts that, if it did remake the loan, the interest rate would be Prime plus two or three percent. In *In re Richards*, this Court stated:

> The United States Court of Appeals for the Eleventh Circuit recently considered the present value requirements of section 1225(a)(5)(B)(ii) of the Bankruptcy Code. In *Travelers Insurance Co. v. Bullington*, [878 F.2d 354 (11th Cir.1989) ], the court stated: " 'Value' must be determined objectively. Simply because a creditor subjectively would not extend a mortgage on the same terms does not mean that objectively the mortgage does not have a given value." 878 F.2d at 358. The rate at which a specific creditor lends money, therefore, is not the determining factor for present value purposes. Furthermore, Movant's entitlement to present value arises under and is governed by the Bankruptcy Code rather than by the contract between Movant and Debtor. The Bankruptcy Code, therefore, governs the appropriate rate of interest.

106 B.R. at 765–66. Thus, the interest rate which Georgia Development would charge is not the sole determining factor.

■ Mr. Skinner testified that the Farm Credit Administration has a five-tier loan system and bases the interest on the Prime Rate. Mr. Skinner testified that Farm Credit would charge its best customers Prime Rate plus two to two-and-one-half percent for a thirty-year loan.

Debtor, through its partners, defaulted on the loan and filed a petition for bankruptcy. At first glance, this appears to show a significant risk of subsequent default and loss to Georgia Development. Debtor's assets, however, are sufficient to fully secure the indebtedness. Debtor's individual partners remain personally liable on the promissory note should a deficiency occur. The individual partners' financial statements show that they had a combined net worth of about $200,000 shortly before they applied for the Georgia Development loan. Georgia Development presented no evidence to show that the individual partners' net worth was different at the confirmation hearing. Debtor scheduled its debts, other than the Georgia Development loan, as totalling $13,900. The Court is persuaded that Debtor and its individual partners have sufficient assets to minimize the risk of loss to Georgia Development. The individual partners have shown that they are willing to use their individual incomes to fund a deficiency in Debtor's income.

The Court declines to use the interest rate which Farm Credit charges its customers. Mr. Skinner testified that Farm Credit is a lender of last resort. Although Debtor defaulted on the promissory note, the facts show that Debtor and the individual partners have sufficient assets to prevent a loss to Georgia Development. Georgia Development urges the Court to require that Debtor repay its debt using thirty-year amortization with a twenty-year balloon. Georgia Development has not shown the Court the market rate for this type of loan.

■ In the case at bar, Georgia Development presented no evidence to establish the

prevailing interest rate for any financial instruments other than the Prime Rate. Debtor has agreed to pay interest based on the current yield of fifteen-year term Treasury Bonds plus two percent.

In *United States v. Doud*,[12] the United States Court of Appeals for the Eighth Circuit noted that the determination of the proper discount rate in a particular case is a factual inquiry. The court held that a rate based on Treasury Bonds plus two percent (to allow for risks associated with the nature of agricultural economy) gave the creditor present value under section 1225(a)(5)(B).[13]

This Court believes that Georgia Development will be fairly compensated by the 10.2 percent interest rate purposed by Debtor. The Court therefore concludes that Debtor's offer to pay 10.2 percent interest constitutes payment of present value.

■ Georgia Development's final objection is that Debtor's repayment should not be allowed to extend for longer than twenty years. Georgia Development asserts that it cannot make thirty-year loans. In *Travelers Insurance Co. v. Bullington*,[14] the debtor proposed to repay a secured debt over a thirty-year term with a fixed interest rate. The creditor asserted that the thirty-year term violated section 1222(c) of the Bankruptcy Code which limits most payments to a five-year term. The circuit court of appeals stated:

> We find section 1222(b)(9) explicit and dispositive of Travelers' objection: a plan may provide for a payout period greater than five years, provided that it is "consistent with section 1225(a)(5)." Travelers' argument that payments under a plan can never exceed five years would render section 1222(b)(9) a nullity. Thus, the mere fact that the plan provides for a thirty-year payment of Travelers' allowed secured claim does not violate section 1225.

878 F.2d at 357.

Georgia Development urges that the Court should allow Debtor to pay the al-

lowed secured claim with a thirty-year amortization, but impose a balloon payment at the end of the twentieth year. *See In re Foster*, 79 B.R. 906 (Bankr.D.Mont.1987) (thirty-year amortization with fifteen-year balloon); *In re Smith*, 78 B.R. 491 (Bankr. N.D.Tex.1987) (thirty-year amortization with a twenty-year balloon). *See also* 5 *Collier on Bankruptcy* ¶ 1225.03[4][b] (15th ed.1989) (court can overcome inequity of a long-term fixed interest secured loan by providing for a long-term amortization, but imposing a balloon payment at the end of a specified period).

The Court is persuaded that Georgia Development's request is appropriate. Debtor will have twenty years to get on its feet financially and establish a favorable credit history. The family farm will be saved. Debtor will owe Georgia Development about $84,000 (66 percent of the current claim) in twenty years. During this time, Debtor can pursue other financing.

An order in accordance with this memorandum opinion will be entered this date.

## ORDER

In accordance with the memorandum opinion entered this date; it is

ORDERED that the objection to confirmation filed by Georgia Development Authority on the 2nd day of January, 1990, hereby is overruled; and it is further

ORDERED that counsel for LLL Farms, Debtor, file a proposed order of confirmation which is in accordance with the memorandum opinion entered this date; and it is further

ORDERED that this order be entered on the docket on the date set out below.

SO ORDERED.

---

**12.** 869 F.2d 1144 (8th Cir.1989).

**13.** 869 F.2d at 1146.

**14.** 878 F.2d 354 (11th Cir.1989).