**In the Matter of Marvin E. BILLMAN, Virginia L. Billman, Debtors.**

**Bankruptcy No. 87–1236–C J.**

United States Bankruptcy Court, S.D. Iowa.

Oct. 31, 1988.

Dallas J. Janssen, West Des Moines, Iowa, for debtors.

Thomas H. Burke, Des Moines, Iowa, for FLB.

Linda R. Reade, Asst. U.S. Atty., Des Moines, Iowa, for U.S.A.

Anita L. Shodeen, Des Moines, Iowa, Chapter 12 trustee.

Michael P. Mallaney, Des Moines, Iowa, for Brenton Nat. Bank.

Terry L. Gibson, West Des Moines, Iowa, for U.S. trustee.

## ORDER

LEE M. JACKWIG, Chief Judge.

On May 5, 1988 a hearing on a motion for relief from stay and confirmation of the debtors' amended and substituted Chapter 12 plan came on for hearing in Des Moines, Iowa. Dallas J. Janssen appeared on behalf of the debtors. Michael P. Mallaney appeared on behalf of Brenton National Bank (Brenton). Terry L. Gibson appeared on behalf of the United States Trustee. Brenton interposed a number of objections to the debtors' plan and sought relief from the automatic stay. The parties submit the case on a stipulation of facts and briefs.

## FACTS

On May 3, 1985 the debtors executed promissory notes in favor of Brenton in the amounts of $175,000.00 and $5,000.00. To secure the debt the debtors granted Brenton a security interest in crops, livestock, and machinery and a mortgage interest in certain real estate. The notes are cross-collateralized by both the mortgage and security agreement. The Federal Land Bank (FLB) holds a first mortgage interest

in the real estate. The FLB's interest is fully secured and interest accrues on its claim in the amount of $28.70 per day.

As of May 5, 1987, the filing date of the Chapter 12 petition, the debtors owed Brenton $170,107.82. If permitted, interest would accrue on the $175,000.00 note at a rate of $55.54 per day and at a rate of $1.73 per day on the $5,000.00 note. The total amount of debt with interest and principal calculated as of May 5, 1988 is $190,246.19. The debtors have made no payments on the note since April 14, 1987. The $175,000.00 note by its terms is due and payable in full on February 2, 1992.

The $175,000.00 note concerns an operating loan backed by a 90% Farmers Home Administration (FmHA) guarantee. The parties state that pursuant to the terms of the guarantee, the guarantee documentation and the applicable regulations, the guarantee expires on May 3, 1991. Upon review of the documents and 7 C.F.R. Part 1980, the court questions the parties' characterization of these materials. The guarantee clearly sets forth when it terminates:

> This loan note guarantee will terminate automatically (a) upon full payment of the guaranteed loan; or (b) upon full payment of any loss obligation hereunder; or (c) upon written notice from the lender to FmHA that the guarantee will terminate 30 days after the date of notice, provided the lender holds all of the guaranteed portion and the loan note guarantee(s) are returned to be cancelled by FmHA.

In their plan, the debtors fix Brenton's allowed claim secured by real estate at $99,610.56. They propose to use a 25–year amortization with a 10.31 discount rate. A balloon payment is scheduled for April 1, 2002. The allowed claim secured by chattel is set at $49,950.00. The debtors plan to amortize the claim over a period of 7 years at a discount rate of 9.35%. The plan does not provide for any payment of interest on the claim for the period between the petition date and the date of confirmation.

The plan provides that Brenton will retain its lien on the real estate and the machinery for the amount of the secured claim on each. The plan does not provide for cross-collateralization of the original mortgage and security agreement and does not specifically preserve other covenants contained in the mortgage and security agreement.

The debtors' monthly report for March, 1988 reflects cash on hand of $35,386.05. Apparently this money represents in part proceeds from the debtors' 1987 crop that they planted postpetition. The money is unencumbered and not reflected in the debtors' liquidation analysis.

## DISCUSSION

### I.

■■■ Brenton first argues that the debtors' plan fails to satisfy the requirements of the "best interest of creditors test" found at 11 U.S.C. section 1225(a)(4). This provision provides:

> (a) Except as provided in subsection (b), the court shall confirm a plan if—
>
> . . . .
>
> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

*Id.* In effect, Brenton reads the "on such date" language of section 1225(a)(4) as referring to the clause "as of the effective date of the plan". According to Brenton, if a Chapter 7 liquidation were conducted on the effective date of the plan, the $35,386.05 in farm proceeds would be available to unsecured creditors. Since the debtors did not include these proceeds in their liquidation analysis, Brenton concludes the "best interest of creditors test" is not met. The debtors contend that "on such date" refers to the date the debtors filed bankruptcy.

In another case filed today, this court ruled that similar postpetition preconfirmation property of the estate must be included in the liquidation analysis. *Matter of Bluridg,* 93 B.R. 648 (Bankr.S.D.

Iowa 1988). The *Bluridg* findings and conclusions are incorporated herein by reference. However, the *Bluridg* ruling has little impact in the present case. That is, the requirement that the creditors receive at least as much under the terms of the confirmed plan as they would upon liquidation does not mean that an unsecured creditor is entitled to more than the present value of its unsecured claim. In this case, the debtors propose to pay Brenton's unsecured claim in full on the effective date of the plan. Brenton is the only unsecured creditor. Hence, the failure to include the postpetition preconfirmation property of the estate in the liquidation analysis is, at best, a technicality.

## II.

■ Next, Brenton claims that it is entitled to interest on its claim. Brenton is an undersecured creditor. As such it is not entitled to postpetition interest on its claim except to the extent such payment reflects a decrease in actual value of the collateral since the petition date. 11 U.S.C. section 1205. *See also United Sav. Ass'n v. Timbers of Inwood Forest,* —— U.S. ——, 108 S.Ct. 626, 629–30, 98 L.Ed.2d 740 (1988). Brenton made no such showing.

Brenton maintains that an allowance of postpetition interest is warranted pursuant to 11 U.S.C. section 726(a)(5). This provision requires debtors to pay interest on unsecured debts in cases where debtors are solvent. *Timbers, supra* 108 S.Ct. at 634; *In re Nevada Environmental Landfill,* 81 B.R. 55, 58 (Bankr.D.Nev.1987). Brenton did not establish that the debtor was solvent at or about the time of the confirmation hearing. That is, Brenton did not prove that there were surplus assets in the debtors' estate which would merit payment of interest on its claim.

## III.

■ Brenton objects to the debtors' proposal to amortize that portion of Brenton's claim secured by real estate over a period of 25 years with a balloon payment scheduled for April 1, 2002. Brenton alleges that if payments are extended past 1992, it will be exposed to unreasonable risk because the FmHA guarantee expires in 1992. As stated earlier, the court is dubious of the parties' characterization of the terms of the guarantee. Nothing in the materials submitted by the parties nor in 7 C.F.R. Part 1980 leads the court to conclude the guarantee will terminate in 1992.

However, assuming the parties are correct in their assessment of the facts, the debtors' plan still comports with the requirements of the Code. Questions concerning term of repayment implicate 11 U.S.C. section 1222(b)(9) which states that a plan may "provide for payment of allowed secured claims consistent with section 1225(a)(5) of this title, over a period exceeding the period permitted under section 1222(c)". Section 1222(c) states that, with the exception of subsections 1222(b)(5) and (b)(9), a plan may not provide for payment beyond three years unless the court for cause approves a longer period up to five years. In *In re Janssen Charolais Ranch, Inc.,* 73 B.R. 125, 127 (Bankr.D.Mont.1987), the court explained the limits placed upon payment of secured debt in the Chapter 12 context:

> The only time limits on payment of secured debt are those which are implied by the present value language of 1225(a)(5), and the feasibility test of 1225(a)(6). Under 1225(a)(5), the rights of the unconsenting secured creditor can be modified only if, among other things, the creditor retains its lien on the security and receives collateral with a present value not less than the amount of the secured claim.

In many Chapter 12 cases, the court has permitted debtors to pay claims secured by real estate over a period of 30 years. Here the requirements of paragraphs (5) and (6) of section 1225(a) are met. The debtors' plan provides that the creditor will retain its lien on the land and will receive the present value of its claim. No party has challenged the feasibility of the plan, and the court's review of the debtors' cash flows shows that the plan is indeed feasible.

■ Further the court finds that Brenton's claim will not be subjected to unreasonable risk by the debtors' proposal to pay only $996.62 during the first year. In support of its argument, Brenton relies upon *In re Stoffel*, 41 B.R. 390 (Bankr.D.Minn. 1984). In that case, the debtors' Chapter 11 plan called for a two-year deferral before any payments would be made to certain secured creditors. The plan also proposed a 26-year deferral on payment of accrued interest. The court found that such long delays constituted a violation of the fair and equitable test under 11 U.S.C. section 1129(b)(1). *Id.* at 393. The debtors' treatment of Brenton hardly rises to the level of the unfair treatment accorded the creditors in *Stoffel*. Here Brenton will receive a principal payment at confirmation and a rather large principal and interest payment less than a year from confirmation. Moreover, the entire debt will be paid in 14 years.

### IV.

Brenton objects to the plan on the basis that the plan does not provide that the same terms and conditions of the mortgage and note, except as modified by the plan, remain in effect. Brenton refers to such covenants as payment of taxes, maintenance of insurance and due on sale clause. The court notes that this objection is now moot as the debtors have agreed to modify their plan to satisfy Brenton's concerns.

### V.

■ Brenton contends that the debtors' failure to provide that disposable income will be applied to debt payment violates 11 U.S.C. section 1225(b)(1). This provision states:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> > (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period, or such longer period as the court may approve under section 1222(c), beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

*Id.* An unsecured creditor's objection can be overcome by a showing that the requirements of either subsection (A) or (B) are met. *In re Bullington*, 80 B.R. 590, 592 (Bankr.M.D.Ga.1987). In the instant case, the debtors have satisfied subsection (A) by proposing to pay Brenton, the only unsecured creditor, in full. Therefore, the debtors are not required to commit disposable income to the plan.

### VI.

Finally, Brenton urges the court to grant its motion for relief from stay. It asserts that its claim is not adequately protected in that the interest accruing on the FLB claim is eroding the value of the property securing Brenton's claim. Brenton also argues that the debtors have no equity in the collateral and that the collateral is not necessary for an effective reorganization. The debtors deny these assertions.

The requirements for obtaining relief from the automatic stay are contained in 11 U.S.C. section 362(d), which provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) with respect to a stay of any act against property under subsection (a) of this section, if—
>
> > (A) the debtor does not have any equity in such property; and
> >
> > (B) such property is not necessary to an effective reorganization.

■ With respect to Brenton's claim that its claim is not adequately protected, the court recognizes that the accumulation of

interest on claims of prior lienholders diminishes inferior lienholders' interests which may warrant some form of protection. *In re Polries Bros.,* 49 B.R. 669 (Bankr.D.N.D.1985); *In re American Properties,* 8 B.R. 68 (Bankr.D.Kan.1980). Brenton, however, is adequately protected. The debtors' plan proposes to pay the FLB an installment of $15,132.60 as soon as the plan is confirmed. This payment will in turn increase the value of Brenton's interest in the real estate by the same amount. Thus, Brenton is protected from any erosion of its interest occasioned by the accumulation of interest on FLB's claim.

■ The elements of subsection (d)(2) were not adequately addressed by the parties. The court notes, however, that even assuming the debtors have no equity in the collateral securing Brenton's claim, clearly the collateral is necessary to an effective reorganization. The real estate and machinery securing Brenton's claim make up the debtor's operation. Without this property, there would be nothing with which to organize. Moreover, the court is convinced that an effective reorganization is realistically possible. *See In re Ahlers,* 794 F.2d 388, 298–99 (8th Cir.1986) *rev'd on other grounds sub nom. Norwest Bank of Worthington v. Ahlers,* — U.S. —, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) (the "necessary for an effective reorganization" standard requires a debtor not only to show that the property is essential to reorganization but to demonstrate that an effective reorganization is realistically possible).

### CONCLUSION AND ORDER

WHEREFORE, for the reasons expressed above, the court finds that:

1. The debtors' plan satisfies the "best interest of creditors test" under 11 U.S.C. section 1225(a)(4) insofar as the creditors will receive as much under the plan as they would if the case proceeded under Chapter 7;

2. Brenton is not entitled to postpetition interest on its claim;

3. The 25-year amortization and 14-year repayment period with a balloon payment at the end for Brenton's claim secured by real estate meets the requirements of 11 U.S.C. sections 1222 and 1225;

4. Brenton's objection concerning the terms and conditions of the mortgage and note is moot;

5. The debtors have satisfied the requirements of 11 U.S.C. section 1225(b)(1) by providing for the payment of Brenton's unsecured claim in full; and

6. Brenton is not entitled to relief from the automatic stay.

THEREFORE, Brenton's objections to the plan are overruled. The amended and substituted Chapter 12 plan is hereby confirmed and Brenton's motion for relief from stay is denied.