### In re MULBERRY AGRICULTURAL ENTERPRISES, INC., Debtors.

#### Nos. 87–4137–R, 84–40582.

United States District Court,
D. Kansas.

March 12, 1990.

Donald E. Bucher, Gould & Moore, P.C., Kansas City, Mo.

Max Eugene Estes, Williams, Larson, Strobel, Estes & Malone, P.A., Dodge City, Kan.

Winton A. Winter, Jr., Stevens, Brand, Lungstrum, Golden & Winter, Lawrence, Kan.

Joanne B. Stutz, Evans & Mullinix, Kansas City, Mo.

Kurt Stohlgren, U.S. Trustee's Office, Wichita, Kan.

Mary E. May, Fleeson, Gooing, Coulsen & Kitch, Wichita, Kan.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This bankruptcy appeal challenges the confirmation of the debtor's reorganization plan under Chapter 11 of the Bankruptcy Code. The appellants are Wyatt Shelor, Ruth Shelor and Ralph Shelor (the "Shelors"), and Marvin and Evelyn Harrell (the "Harrells"). Both the Shelors and Harrells argue that the plan of reorganization, which stretches to 30 years the terms of their original contracts for the sale of lands, is not fair and equitable. The Harrells also present a second argument on appeal which shall be discussed later in this opinion.

The facts in this case are largely undisputed. In November 1975, the Shelors entered a contract for the sale of 160 acres of land. The purchase price was $112,000.00 with interest accruing on the unpaid balance at the rate of seven percent per year. Payments of $7,592.00, plus accrued interest, were to be made annually. If the scheduled payments had been made, the entire purchase price would have been paid by December 1, 1986. The rights of the purchasers were assigned to the debtor sometime prior to the time the debtor filed for bankruptcy. At the time debtor filed for bankruptcy, the balance owing the Shelors was $63,596.46. Under the plan of reorganization, the Shelors are to be paid the value of the collateral, $48,000.00, or such other amount as to be determined to be the amount of the allowed secured claim by the court, together with interest at 10% per annum amortized over thirty (30) years with equal annual payments to be made on or before December 31st of each year following the effective date of the plan.

In September 1976, the Harrells entered into a contract to sell three quarter-sections of land. The purchase price was $352,000.00. The purchaser was to make a payment of $50,000.00 plus interest on December 15, 1976 and, thereafter, yearly installments of twenty to thirty thousand dollars until the purchase price was paid in full. Interest on the unpaid balance was to be computed at 8¾% per annum after December 15, 1977. Interest was to be paid annually on the unpaid balance. Deeds to the quarter-sections were held in escrow. The deeds were to be released in sequence to the purchaser upon the payment of $162,000.00, and then $282,000.00, and then the full purchase price. The purchaser's rights under the contract had been assigned to the debtor at the time the debtor filed for bankruptcy.

The Harrells were 67 years old at the time they made their objection to the plan of reorganization. The income from the sale of their land was intended to serve as income during their retirement years, with the final payment due in 1990. At the time the debtor filed for bankruptcy, the balance owing the Harrells was $289,885.39. When the debtor proposed the reorganization

**32**

plan, the fair market value of the three quarters together was $192,000.00.

Under the reorganization plan, the Harrells' claim to one quarter would be paid in full by paying the principal due on the quarter in the amount of $31,135.00 plus interest at the rate of 8¾% from January 1, 1981 to the effective date of the plan. This amount would be paid plus interest at 10% per annum in equal annual installments amortized over thirty years. The claim of the Harrells to the other two quarters would be satisfied by paying the value of the collateral, $128,000.00, with 10% interest amortized over thirty years, in equal annual installments.

Under the Bankruptcy Code, a reorganization plan may be confirmed in spite of the objection of creditors if various requirements set forth in § 1129(a) are met and "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). To be "fair and equitable" a plan must satisfy certain economic prerequisites which are set forth at § 1129(b)(2)(A)(i) through (iii).

The bankruptcy court held the economic prerequisites were met because the plan provided for retention of liens and payment to the Harrells and Shelors, including deferred cash payments totalling the allowed amount of their claims having a value, as of the effective date of the plan, of the value of their interest in the property. See § 1129(b)(2)(A)(i)(I) & (II). Appellants argue the plan is not fair and equitable because payment of their claims will not be received within a reasonable time. Indeed, the Harrells suggest full payment will not be received in their lifetime.

■ The bankruptcy court stated the Harrells could sell their interest under the plan to receive an accelerated full payment. The Harrells suggest this is not realistic or, at least, will require a further discounting of their claim. The bankruptcy court also remarked that a purely economic analysis should be made.

The Fifth Circuit has recently stated that:

"technical compliance with all the requirements in § 1129(b)(2) does not assure that the plan is 'fair and equitable.' ... Section 1129(b)(2) set minimal standards plans must meet. However, it is not to be interpreted as requiring that every plan not prohibited be approved. A court must consider the entire plan in the context of the rights of the creditors under state law and the particular facts and circumstances when determining whether a plan is 'fair and equitable.'"

*In re D & F Construction Inc.*, 865 F.2d 673, 675 (5th Cir.1989). Assuming that more is required than a purely economic analysis based on the factors listed in § 1129(b)(2), the court has examined several cases. After this review of other cases, we believe the stretch out of the Harrells' and Shelors' mortgage terms is neither unfair nor inequitable. *In re Billman*, 93 B.R. 657, 660 (Bkrtcy.S.D.Iowa 1988) (seven-year note stretched to 25 years with a balloon payment after 15 years—"In many Chapter 12 cases, the court has permitted debtors to pay claims secured by real estate over a period of 30 years."); *In re Snider Farms, Inc.*, 83 B.R. 977, 999 (Bkrtcy.N.D.Ind.1988) (and cases cited therein) ("the 'stretchout' of the loan to make the plan payment period thirty years would not be unreasonable given the fact that conventional farm mortgages are often lengthy and pursuant to the Debtor's unrefuted testimony the land is in good condition."); *In re O'Farrell*, 74 B.R. 421, 423 (Bkrtcy.N.D.Fla.1987) (thirty years is a reasonable period for a loan secured by real estate); *In re Martin*, 66 B.R. 921 (Bkrtcy.D.Mont.1986) (stretchout of note and mortgage from seven to twenty years confirmed); *In re Mulnix*, 54 B.R. 481 (Bkrtcy.N.D.Iowa 1985) (stretchout of payment of judgment in divorce case from 18 months to 20 years); *In re Hollanger*, 15 B.R. 35, 47 (Bkrtcy.W.D.La.1981) (extension of payment terms for seven years is reasonable).

We acknowledge these cases do not involve creditors such as the Harrells who intended to retire upon the proceeds of their land sale. But, other cases have not

considered a creditor's reluctance to make long-term loans sufficient to avoid a cram down, if the other requirements of § 1129 are satisfied. Bankruptcy Judge Pusateri stated in *In re White*, 36 B.R. 199, 203 (Bkrtcy.D.Kan.1983):

> The Court believes that § 1129 does not per se prohibit long term payouts. If the mathematical requirements of § 1129(b)(2)(A)(i)(II) are satisfied, if the creditor is adequately protected under the plan, pursuant to the general fair and equitable requirement of § 1129(b)(2), and if the debtors can prove they can make payments over the life of the plan pursuant to § 1129(a)(11), then the plan is confirmable and can be crammed down on a rejecting class of secured claim holders, regardless of normal lending practices or policies.

In *Wachovia Bank and Trust Co. v. Harris*, 455 F.2d 841 (4th Cir.) *cert. denied*, 409 U.S. 844, 93 S.Ct. 47, 34 L.Ed.2d 84 (1982), what was intended to be a short-term construction loan which would be assigned from the lender bank to an insurance company for long-term financing, was stretched out for twenty years. The court noted the bank "may still find another lender to assume the obligation it took on for itself" if the maintenance of a long-term loan conflicted with its lending policy. *Id.* at 844. In *In re Benson*, 9 B.R. 854 (Bkrtcy.N.D.Ill.1981), the court stated it would approve a plan, with some suggested modifications, where a loan from a bank, which generally did not make long-term farm real estate mortgage loans, was extended from two years to twenty years.

The court has not found case authority for the proposition that the age of the creditor should control how long or whether a loan from the creditor may be extended under a reorganization plan. The court does not believe the Harrells have established that another lender will refuse to assume their rights under the reorganization plan. The law appears to support the stretch out of lending terms, despite the original intentions of the lenders, given the satisfaction of other prerequisites which have not been challenged here. Accordingly, the court shall affirm the bankruptcy court's approval of the extension of the mortgage terms in the reorganization plan.

■ The Harrells' second argument on appeal concerns the amount of money due them under the reorganization plan. The Harrells' contract with the debtor involved the sale of three quarter-sections of land. Deeds for each section were to be released one at a time as payments were made under the contract. The contract further provided that under certain conditions the purchaser could elect not to purchase any of the three quarter-sections; the separate purchase price for each parcel was stated in the contract: NW ¼—$112,000.00; SW ¼—$120,000.00; and SE ¼—$120,000.00. The payments made prior to bankruptcy went to the purchase of the NW quarter. Under the reorganization plan, each quarter has a fair market value of $64,000.00, an amount considerably less than the contract amount for the property. The plan calls for debtor to pay $31,135.00 plus interest to receive full title to the NW quarter, and then $128,000.00 plus interest to receive the other two tracts of land. The $31,135.00 figure is the amount left owing on the principal under the contract for purchase of the NW quarter. The $128,000.00 figure is the fair market value of the other two parcels.

In so providing, the plan divides the Harrells' claim under the contract into two claims which are placed in different classes. The claim on the NW quarter is treated in a separate class from the claim for payment on the other two tracts. The Harrells contend debtor should either be required to pay the fair market value for the first tract ($64,000.00 instead of $31,135.00), or pay the contract amount for the final two tracts of land—$240,000.00. In other words, the Harrells claim debtor must either abide by the contract or pay the Harrells the liquidated value of the property. Instead, the contract is being followed for the first quarter-section, and the liquidated value controls the payment for the other two sections. Finally, the Harrells also contend debtor is attempting to circumvent a prior order of the bank-

ruptcy court upon debtor's application for determination of status and specific performance.

Debtor contends the law does not require the Harrells' secured claim to be treated within a single class of claims. The plan recognizes the Harrells lacked $31,135.00 plus accrued interest from receiving payment of the full contract value of the first tract of land. The remaining two tracts are treated together. The plan recognizes the Harrells have received nothing for these two parcels and, therefore, the full amount of the tracts' fair market value must be paid before there can be a release of the Harrells' claim. The court does not consider this unfair, inequitable, or contrary to law.

The contract calls for the separate release of the deeds as security for the purchase of the three quarters of land. The purchaser is given an election under certain conditions not to purchase any of the three quarters, and a separate purchase price for each quarter is stated. Under these circumstances, we do not find it unreasonable to split the Harrells' claim into two classes. Section 1129(b)(2)(A)(i)(II) provides that the present value of deferred payments in a reorganization plan need only equal the value of the creditor's interest in the bankruptcy estate's interest in the property. In this instance, the Harrells' interest in the NW quarter is the amount left owing under the contract. The Harrells' interest in the estate's interest in the other two parcels is the value of the collateral, or $128,000.00. Accordingly, we find that the reorganization plan conforms with the legal and equitable requirements for confirmation.

Contrary to the Harrells' final point, this holding does not conflict with a prior ruling of Judge Pusateri upon the debtor's application for determination of status and specific performance. That ruling simply construed the contract to provide that the deed for the NW quarter could not be released to debtor until $162,000.00 in principal, not principal *and* interest, was paid. The reorganization plan also requires this amount in principal alone be paid before the Har-

rells' claim regarding the NW quarter is released.

In conclusion, after a review of the material before the court, we find no clearly erroneous factual findings by the bankruptcy court. Nor do we find an erroneous legal conclusion. The denial of appellants' objections to confirmation of the reorganization plan is affirmed. A copy of this order shall be transmitted to the Clerk of the Bankruptcy Court.

IT IS SO ORDERED.