**In re Allen D. KOCH and Sandra J. Koch, Debtors.**

**Bankruptcy No. L–90–00585C.**

United States Bankruptcy Court, N.D. Iowa.

June 25, 1991.

Joseph A. Peiffer, Eells & Peiffer, Cedar Rapids, Iowa, for debtors.

Randall A. Nazette & Mona Knoll, Nazette, Hendrickson, Marner & Good, Cedar Rapids, Iowa, for Equitable Life Assur. Soc. of the U.S.

Gerald Fatka, Lynch, Dallas, Smith & Harman, Cedar Rapids, Iowa, for American Trust & Sav. Bank, Lowden, Ia.

### RULING RE: OBJECTION TO CONFIRMATION

MICHAEL J. MELLOY, Chief Judge.

This matter is before the Court on the objection to plan confirmation by Equitable Life Insurance Company ("Equitable"). Equitable argues that the proposed plan of reorganization does not provide a fair repayment of its secured claim under 11 U.S.C. § 1225(a)(5)(B)(ii).[1] Debtors, Allen D. and Sandra J. Koch ("debtors"), contend that the plan's treatment of the Equitable secured claim satisfies the standards for confirmation found in § 1225(a)(5)(B)(ii). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). The following opinion granting Equitable's objection in part, and denying it in part, constitutes this Court's findings of fact, conclusions of law,

---

1. All statutory references in this opinion are to Title 11, United States Code, Bankruptcy Reform Act of 1978, as amended, unless otherwise specified.

and order pursuant to Fed.R.Bankr.P. 7052.

## Findings of Fact

On November 8, 1979, the debtors entered into a 20 year promissory note with the Equitable for $150,000. The terms of the note required the debtors to pay accrued interest plus principal of $2,000 on the first day of September, 1980, and interest plus $2,000 on the first day of each March and September thereafter until the first day of March, 2000, when the entire amounts of principal and interest become due and payable. Interest accrued on the unpaid principal at the rate of 10½% per annum. The note is secured by a properly recorded mortgage on debtors' real estate.

The debtors filed for Chapter 12 bankruptcy on April 2, 1990. In their schedules, the debtors listed Equitable as a secured creditor of a $117,880 claim. The debtors' plan of reorganization filed July 2, 1990, proposes to repay Equitable's allowed secured claim over 30 years in 30 equal annual installments at an interest rate computed by determining the 30 year treasury bond rate on the date of confirmation and then adding a 2% risk factor.

Equitable filed an objection to the debtors' proposed Chapter 12 plan of reorganization. Equitable asserted that the provisions for the length of repayment and the interest rate did not provide a fair repayment of its secured claim. Hence, Equitable asked the Court to deny confirmation of the debtors' Chapter 12 plan as it was proposed. This Court entertained arguments and heard evidence on Equitable's objection to the plan at a confirmation hearing, held on March 5, 1991. Based upon the testimony presented at that hearing, the Court makes the following findings.

1. The farm land that serves as Equitable's collateral is in good condition and the debtors are in good health.

2. The debtors are able to make all of the payments to Equitable under the proposed plan.

3. The debtors would not be able to make the payments under the terms of the original note which calls for twice annual payments through the year 2000 when a balloon payment of the remaining principal and interest is required. Moreover, it is unlikely that the debtors could refinance the debt outstanding to Equitable when the balloon payment is due in the year 2000.

4. Equitable normally makes agricultural loans which are payable over ten years, however, it will loan for up to a maximum of 15 years. Some of those loans are at a fixed rate of interest and some are at a variable rate of interest. Generally, a longer term of loan will command a higher interest rate and will likely result in a variable rate note that is adjustable on some periodic basis.

5. Equitable presented testimony through an experienced banker, who is knowledgeable about agricultural lending practices, as to the current lending practices for loans secured by agricultural real estate. That testimony revealed the following.

a. Most agricultural lenders make loans for a maximum of 15 years. In some rare cases, however, the lenders will allow a 20 year repayment term.

b. Agricultural lenders are making loans for a shorter term than loans made in the 1980's due largely to a more cautious approach to lending resulting from the farm crisis of the mid–1980's.

c. Currently, no agricultural lenders will make 30 year loans on agricultural real estate. This practice of making loans of no more than 20 years is a change from a few years ago when 30 year farm real estate loans were quite common.

d. An annual or three year adjustment in the interest rate will generally result in the borrower being able to get a loan at a lower initial interest rate. A fixed rate loan will require a higher rate than a variable interest note.

e. It is a common practice in agricultural workout situations to have a longer amortization period accompanied by a 10 to 12 year balloon.

## Conclusions of Law

Equitable asserts that the Court should deny confirmation of debtors' Chapter 12 plan because the plan does not provide a fair repayment to Equitable. Equitable believes that the plan treats Equitable's secured claim in a manner inconsistent with the requirements under § 1225(a)(5)(B)(ii). In particular, Equitable argues that the plan's proposal to stretch the repayment term from 10 years to 30 years and to provide a fixed interest rate at 2% over the current 30 year treasury bill rate are unfair repayment provisions and, therefore, the Court should deny confirmation of the plan.

The debtors respond to these arguments by asserting that the provisions in the plan provide Equitable the present value of its allowed secured claim and meet the confirmation standards provided in § 1225(a)(5)(B)(ii). The debtors argue that these provisions are fair to Equitable and provide the debtors with their best chance of reorganization. The debtors' argument is premised in part upon the wide spread practice of confirming agricultural Chapter 11 and 12 reorganization plans on the basis of a 30 year term for real estate loans. The debtors request that they be allowed to obtain confirmation on the same basis as many other farmers in this and other districts around the country.

Equitable's objection that the plan repayment terms are unfair raises two separate but related issues. First, the Court must decide whether stretching the repayment term on Equitable's secured claim from 10 to 30 years violates Chapter 12 confirmation standards. If the Court finds that the 30 year term is appropriate for repayment, then the Court must determine whether 30 year treasury bill rate of interest plus a 2% risk factor is a sufficient interest rate un-

der Chapter 12 confirmation standards for Equitable's secured claim.

### I. *Length of Repayment*

In Chapter 12 "[t]he only time limits on payment of secured debt are those which are implied by the present value language of 1225(a)(5) and the feasibility test of 1225(a)(6)." *In re Janssen Charolais Ranch, Inc.,* 73 B.R. 125, 127 (Bankr. D.Mont.1987). *See also In re Bluridg Farms, Inc.,* 93 B.R. 648, 654 (Bankr. S.D.Iowa 1988) (quoting same material); *In re Billman,* 93 B.R. 657, 660 (Bankr. S.D.Iowa 1988) (same). In this proceeding, § 1225(a)(5) is the operative provision.[2] The present value language of § 1225 states in relevant part, that:

(a) .... the court shall confirm a plan if—

(5) with respect to each allowed secured claim provided for by the plan—

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim.[3]

This provision, however, does not specifically say anything about the length of the repayment term which must be provided under the plan.

Recently, the Eighth Circuit noted that "Congress enacted 11 U.S.C. § 1225(a)(5)(B) to ensure that creditors ... do 'receive a fair repayment'". *Farmers Home Admin. v. Fisher, (In re Fisher),* 930 F.2d 1361, 1362 (8th Cir.1991). *Fisher* recognizes the dual purpose of Chapter 12. Chapter 12 has the objective of giving farmers "... a fighting chance to reorganize their debts and to keep their land."

2. The parties have stipulated that all of the Chapter 12 confirmation standards are satisfied with the exception of the term of the loan and the interest rate to be paid which the Court addresses here. Hence, the feasibility test under § 1225(a)(6) is not in dispute and will not be addressed in discussing the term of repayment or the interest rate.

3. The provisions of § 1225(a)(5)(B)(ii) are similar to the Chapter 11 requirements found in § 1129(b)(2)(A)(i)(II). Chapter 11 decisions interpreting the interest rate and term for Chapter 11 plans are relevant to the interpretation of § 1225(a)(5)(B)(ii).

930 F.2d at 1362 (quoting the legislative history to Chapter 12 at H.R.Rep. No. 958, 99th Cong.2d Sess., 48–49 (1986), *reprinted in* 1986 U.S.Code Cong. & Admin.News 5249–5250). Along with the goal of giving farmers a fighting chance is the objective found in provisions such as § 1225 to insure creditors receive a fair repayment.

The Eighth Circuit previously has indicated that one factor which evinces fair repayment is providing the same length of repayment under the plan as was agreed upon in the original note. *See In re Monnier Bros.*, 755 F.2d 1336, 1342 (8th Cir. 1985) (while approving plan under 1129(b) the court noted that the repayment under the plan would occur under the same length of time it would have outside of bankruptcy). There is no case law in the Eighth Circuit, however, which specifically has addressed the issue of whether it is permissible to "stretch out" a repayment term under a Chapter 12 plan.

The Courts which specifically have addressed the permissibility of stretching out repayments to secured creditors almost unanimously allow for some stretching. *See, e.g., Travelers Ins. Co. v. Bullington*, 878 F.2d 354, 356–58 (11th Cir.1989); *In re Mulberry Agr. Enterprises, Inc.*, 113 B.R. 30, 32–33 (D.Kan.1990); *In re Miller*, 98 B.R. 311, 312 (Bankr.N.D.Ohio 1989); *In re Bluridg Farms*, 93 B.R. at 654; *In re Billman*, 93 B.R. at 660; *In re Snider Farms, Inc.*, 83 B.R. 977, 999 (Bankr. N.D.Ind.1988). The specific question here, however, is whether stretching the repayment term from the 10 year term remaining on the original note to a 30 year term under the plan comports with the *Fisher* court's observation that § 1225(a)(5)(B) was intended to "insure creditors fair repayment." *In re Fisher*, 930 F.2d at 1362.

Some courts appear to believe that a plan meets the "fair repayment" standard simply by providing for the present value of the secured claim at confirmation over the life of the plan, regardless of the length. *See Travelers*, 878 F.2d at 356–58 (using present value standard court approved plan's repayment of secured claim over 30 years where in the original note it was

payable over four years); *In re Mulberry*, 113 B.R. at 32–33 (allowing a Chapter 11 plan to stretch real estate contract essentially due and payable at time of confirmation for a period of 30 years); *In re Snider Farms*, 83 B.R. at 999 (allowing plan to stretch secured creditors payments over 30 years). Those courts essentially focus on whether the "mathematical requirements" under § 1225(a)(5)(B)(ii) are satisfied. *Snider Farms*, 83 B.R. at 999. The *Snider Farms* court specifically stated that:

> If the mathematical requirements of § 1225(a)(5)(B)(ii) are satisfied and the Debtor can show that they can make the payments over the life of the plan pursuant to § 1225(a)(6), the plan is confirmable and can be "crammed down" over the objections of a secured creditor regardless of its normal lending practices and policies or the terms and conditions of the required loan instruments.

83 B.R. at 999.

Other courts, however, have read "fair repayment" under § 1225(a)(5)(B) more narrowly in finding that there are limitations on the length of the repayment which can be imposed on secured claimants in Chapter 12. *In re LLL Farms*, 111 B.R. 1016, 1022 (Bankr.M.D.Ga.1990); *In re Foster*, 79 B.R. 906, 910–11 (Bankr.D.Mont. 1987); *In re Smith*, 78 B.R. 491, 494 (Bankr.N.D.Tex.1987). These courts have interpreted § 1225(a)(5)(B) to account for more than bare mathematical present value analysis. For example, in *LLL Farms*, the court found that where the lender, the Georgia Development Authority, could not make 30 year loans the plan could not stretch repayment of the Georgia Development Authority loan over a 30 year period. 111 B.R. at 1022. Likewise, in *Foster*, the court concluded that the 30 year proposed repayment term in the plan was not supported by the evidence. 79 B.R. at 911. The creditors, land contract vendors, demonstrated that in contract for deed situations "the normal term is ten to fifteen years, amortized over twenty years, with a balloon payment at ten years." *Foster*, 79 B.R. at 911. Again, in *Smith* the court determined that the "market" supported a shorter term than the plan provided and

entered an order requiring a shorter repayment under the plan in accordance with the market standard. 78 B.R. at 494. These cases imply that the term of repayment under § 1225(a)(5)(B)(ii) should be supported by some evidence of reasonableness, customary lender practices, or market standards not simply mathematical present value. *See also* 4 *Collier on Bankruptcy* ¶ 1225.03[b] at 1225–18 (15th Ed.1991) (Observing that under § 1225(a)(5)(B) "the primary consideration in analyzing the appropriate term for payment of a secured claim is the type of property securing the claim. Under no circumstances should a court permit payment of claim exceeding the customary term for which loans secured by such property are made."). This Court must therefore determine whether "fair repayment" constitutes proving only that the creditor receives mathematical present value or whether fair repayment requires some evidentiary showing beyond present value.

 This Court believes that the duration of repayment proposed for a secured claim under a plan of reorganization must be in line with customary lending practices or market standards to satisfy § 1225(a)(5)(B)(ii). This treatment is required to "insure that creditors ... receive a fair repayment." *Fisher*, 930 F.2d at 1362. Moreover, this "market" approach is consistent with the way the courts have characterized the Chapter 12 "cramdown" process. The *Fisher* court, following the analysis of Chapter 12 cramdown in *United States v. Arnold*, 878 F.2d 925 (6th Cir. 1989) noted:

> The *Arnold* court viewed the "cramdown" provision as a compromise between the debtor and the secured creditor, i.e., the debtor, over the objection of the secured creditor, is allowed to "cramdown" a payment plan repaying only the secured portion of the debt. "The creditor is required in effect 'to make a *new loan* in the amount of the value of the collateral....'" *Arnold*, 878 F.2d at 928 ... The court in *Arnold* explained that because the "cramdown" provision forces the creditor to make a *new loan* in the amount of the current value of the

collateral, the creditor is entitled to the current market rate under the repayment plan. *Arnold*, 878 F.2d at 929.

*Fisher*, 930 F.2d at 1364 (emphasis added). This Court concludes that in being forced to make a "new loan" it logically follows that the creditor also should be entitled to current market rate of interest and customary duration of repayment.

This Court is aware that the Eleventh Circuit noted in the *Travelers* case that evidence showing "Travelers itself would never lend for a period longer than twenty years" was irrelevant to the final resolution of the dispute. 878 F.2d at 358. However, there is no indication that Travelers ever presented evidence that a period of repayment beyond 20 years exceeded generally prevailing market standards. From all indications Travelers never presented any objective evidence to support its objection to the 30 year repayment term under the plan. *See* 878 F.2d at 357–58.

The same observation holds true for the *Mulberry* and *Snider* decisions as well. In *Mulberry*, a § 1129(b) case, the court concluded that an objection to the length of repayment based on evidence about the advanced age of the creditors, contract vendors, was insufficient to prevent stretching the term from an original term of 11 years to 30 years. Yet, there is no indication that the creditors presented any evidence about the market standards or customary treatment of the length of real estate contracts. Likewise, in *Snider*, the court observed that the secured creditors "normal lending practices or policies" do not effect the court's determination under § 1225(a)(5)(B). 83 B.R. at 999. Again, however, there is no indication that the secured creditor presented any objective evidence of the market practice for like type loans.

This Court also finds that the creative approach of the courts in *LLL Farms, Foster*, and *Smith* in resolving the duration of repayment disputes provides the best balance between the intention of § 1225(a)(5)(B) to insure fair repayment to creditors and the reorganization opportunities for the debtors. In *LLL Farms*, the

court allowed the secured claim to be amortized over 30 years with a balloon payment of all principal and interest owing at the end of the 20th year. 111 B.R. at 1022. The *LLL Farms* court found this to be the most appropriate resolution of the matter because it preserved the debtors reorganization effort but did not require the lender to make a loan it was not allowed to make.

Likewise, the court in *Foster* found that debtors' request to stretch the repayment from 10 years to 30 years was not supported by the evidence presented. 79 B.R. at 911. The court in *Foster* found that the longest time for which such contracts are normally written is 10 to 15 years. The *Foster* court concluded that, on the record before it, the best resolution was to allow a 30 year amortization with a balloon payment at 15 years. Similarly, the *Smith* court found that the repayment term would be a 30 year amortization with a balloon payment of all principal and interest becoming due at the end of 20 years. 78 B.R. at 494. *Smith* noted that this resolution was supported by the evidence, fair to the creditor, and could facilitate the reorganization effort.

The *Collier* treatise, in supporting this type of resolution, has observed that courts may prevent an unfair treatment to secured creditors by providing "for a long-term amortization but to impose a balloon payment at the end of a specified period." 4 *Collier on Bankruptcy* ¶ 1225.03[b] at 1225–18 (15th Ed.1991). This type of resolution is supported by the evidence in this case as well. The testimony shows that in agricultural work-out situations it is common to have a long-term amortization with a balloon payment at the end of an earlier period. Moreover, the evidence is clear that the longest "new loans" in the agricultural lending market today are 20 years, with Equitable not making any loans longer than 15 years.

■ This Court concludes, therefore, that the "new loan" which results under this Chapter 12 confirmation should be treated under a 30 year amortization with a balloon payment of all principal and interest being due at the end of 15 years. This resolution will provide the fairest balance in this case. The testimony indicated that the debtors could not repay the loan or refinance the loan in 10 years. This arrangement allows the debtors 15 years to pay the loan and regain their financial health. This arrangement also comports with the Chapter 12 purpose of giving farm debtors "a fighting chance to reorganize their debts and to keep their land." *Fisher*, 930 F.2d at 1362 (citation omitted). Conversely, this resolution also comports with the intention of § 1225(a)(5)(B) "to insure that creditors ... receive a fair repayment" since it provides the creditors a fair market repayment schedule on the "new loan." *See id.*

This Court recognizes that many Chapter 11 and Chapter 12 plans have been confirmed in this district and other districts around the country which allow for a 30 year repayment of real estate loans. However, this is the first time, in the experience of this judge, that a creditor has raised a specific objection to the length of term and presented competent and credible testimony as to current industry wide lending practices involving the length of repayment of real estate loans. This Court also believes that it is important to take into consideration changing customs and practices in the lending industry. While a 30 year real estate loan may have been the norm five to ten years ago, the evidence presented in this case shows that those practices have changed. This Court concludes that if the dictates of the *Fisher* case are to be followed and the creditor is to receive fair repayment terms, changes in lending practices must be recognized. Accordingly, it is the conclusion of this Court that repayment terms which allow for a 30 year amortization and a 15 year balloon are consistent with the Eighth Circuit's decision in the *Fisher* case.

## II. *Interest Rate*

■ Having concluded that the length of the amortization period on the repayment to Equitable should be 30 years, the Court must decide whether the interest rate proposed by the debtors' plan is appropriate.

The debtors proposed to pay Equitable interest based on the rate currently paid on 30 year treasury bonds plus a 2% addition for the risk factor involved. The Court finds that this is the appropriate interest rate.

In *United States v. Doud*, 869 F.2d 1144, 1145 (8th Cir.1989), the Eighth Circuit decided that the market rate of interest should apply to § 1225(a)(5)(B)(ii) determinations. In determining market rate the *Doud* court received guidance from *Monnier* which stated:

> The appropriate discount rate must be determined on the basis of the rate of interest which is reasonable in light of the risks involved. Thus, in determining the discount rate, the court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration for the quality of the security and the risk of subsequent default.

*Monnier*, 755 F.2d at 1339 (quoting 5 *Collier on Bankruptcy* ¶ 1129.03, at 1129-65 (15th ed. 1988)). The *Doud* court went on to affirm the bankruptcy court determination that the use of a formula, almost identical to the one proposed by the debtors in this case, would result in the setting of an appropriate market rate of interest.

Equitable's major objection, beyond the length of repayment, is that the plan proposes a fixed rate of interest. This Court previously has considered this argument in the context of a Chapter 11 confirmation and determined that the use of a fixed rate of interest, using the *Doud* formula, is fair and equitable and provides the debtor the most effective chance to reorganize his business to the benefit of all creditors. *In re Noe*, 76 B.R. 675 (Bankr.N.D.Iowa 1987). *See also Doud*, 869 F.2d at 1146; *Smith*, 78 B.R. at 494 (noting that 30 year fixed interest rate amortization provides farmer with definite basis from which to plan operations and presents the stability needed for a successful reorganization). The Court concludes that the interest rate proposed under the debtors Chapter 12 plan is appropriate.

## ORDER

It is therefore ordered that the objection of Equitable Life Insurance Company is sustained and confirmation of the debtors' plan of reorganization is denied.

It is further ordered that if the debtors amend their plan within 15 days from the date of this order to provide for payment terms that are consistent with the findings in this memorandum, an order of confirmation will enter without further hearing.

DONE AND ORDERED.