In the Matter of Gary Lee ROSE, Beverly Jean Rose, Debtors.

Bankruptcy No. 91–30917 HCD.

United States Bankruptcy Court, N.D. Indiana, South Bend Division.

Nov. 26, 1991.

Lynn G. Chase, South Bend, Ind., for debtors.

James Masters, South Bend, Ind., for Gardner H. Abner, creditor.

Mark E. Wagner, Bremen, Ind., Chaper 12 Trustee.

## MEMORANDUM OF DECISION

HARRY C. DEES, JR., Bankruptcy Judge.

On July 5, 1991, the debtors filed their CHAPTER 12 FARM PLAN. Thereafter, on August 22, 1991, Gardner H. Abner ("Abner") filed his OBJECTION TO CONFIRMATION. The court held a hearing on confirmation at the debtors' Chapter 12 plan on August 29, 1991, and took the matter under advisement on October 23, 1991, following the time allowed for submitting briefs. For the reasons set forth below, the court now sustains Abner's OBJECTION TO CONFIRMATION.

1. Following a hearing on valuation of the real estate, the court entered its Order on November 7, 1991, finding that the real estate has a fair market value of $275,000.

## JURISDICTION

Pursuant to 28 U.S.C. § 157(a) and Northern District of Indiana General Rule 45, the United States District Court for the Northern District of Indiana has referred this case to this court for hearing and determination. After reviewing the record, the court determines that the matter before it is a core proceeding within the meaning of § 157(b)(2)(L) over which this court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1) and 1334. This entry shall serve as findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52, made applicable in this proceeding by Federal Rules of Bankruptcy Procedure 7052 and 9014.

## BACKGROUND

On April 5, 1991, Gary Lee Rose and Beverly Jean Rose, d/b/a 4 Roses Shorthorns, filed their petition under Chapter 12 of the Bankruptcy Code. The debtors' CHAPTER 12 FARM PLAN classified the debtors' obligation to Abner in the sum of $354,409.77, secured by 316.472 acres of real estate located in Noble Township, Cass County, Indiana, as an allowed secured claim in the amount of $250,000 (representing the alleged fair market value of the real estate)[1] and an allowed unsecured claim in the amount of $104,409.77. CHAPTER 12 FARM PLAN at 2. The plan proposed to pay Abner's allowed secured claim in annual installments of $26,519.81 over 30 years at the rate of 10% interest per annum.[2] *Id.* The plan further obligated the debtors to provide hazard insurance on Abner's collateral and pay real estate taxes or assessments on the real estate. *Id.*

Abner objected to the proposed treatment of his claim under the plan, submitting that the plan unfairly extends the debtors' obligation to him for 30 years. Abner stated that he is 69 years old. On February 22, 1982, the debtors borrowed

2. According to the court's calculations, the installments under this proposal would increase to approximately $29,171.79 annually based on the valuation of the real estate at $275,000.

$297,250 from Abner pursuant to MORT-GAGE NOTE. Under the terms of the note the debtors' obligation to Abner should have been paid in full by December 31, 1991. Abner noted that he was 60 years old when he sold the property in controversy to the debtors in 1982. The promissory note provided for 10% interest per annum with a balloon payment of $150,000 due on December 31, 1986, coinciding with Abner's retirement. Hence, Abner argued pursuant to 11 U.S.C. § 1129(b)(1) and (2)[3] that the debtors' plan is not "fair and equitable." Abner's brief at 4, citing *In re D & F Const., Inc.* 865 F.2d 673, 676 (5th Cir.1989). Abner noted that if the debtor surrendered the property to him, he would not sell the real estate on a note with a 30–year term. Rather, he would obtain a cash sale or would require a balloon payment of the principal balance within two or three years if absolutely necessary. Abner also doubted whether even a commercial lender would accept an interest rate of 10% given the risk involved and thus alleged the plan failed to meet the "fair and equitable" and "indubitable equivalent" requirements of § 1129(b).[4] Abner further submitted that the debtors' plan is not feasible because of its lengthy payout period and thus asked the court to deny confirmation of the debtors' plan.

In their brief the debtors contended that their plan is fair and equitable as Abner has the option of selling the debtors' promissory note and mortgage in the commercial market upon execution of the same. Debtors' brief, relying on the court's analysis in *In re Mulberry Agricultural Enterprises, Inc.*, 113 B.R. 30 (D.Kan.1990). The debtors argued that even though Abner would have to take a substantial discount of a note in a sale because the debt exceeds the fair market value of the security, the result would be fair to both parties, considering the large actual loss which the debtors experienced in purchasing the property. Alternatively, the debtors proposed that the court "extend the amortization terms to 25 years at the current market interest rate with a balloon payment due in ten (10) years from the confirmation of the Chapter 12 Plan...." *Id.* at 3.

## DISCUSSION AND DECISION

The issues before the court are (1) whether the debtors' plan unreasonably and unfairly extends the debtors' obligation to Abner at an unfair interest rate and (2) whether the plan is feasible. To answer these questions, the court turns to the requirements of 11 U.S.C. § 1225(a)(5) and (6).[5] These subsections provide that a court should confirm a plan if:

(5) with respect to each allowed secured claim provided for by the plan

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

11 U.S.C.S. § 1225(a)(5) and (6) (Law.Co-op.1991). Inasmuch as " 'Congress enacted § 1225(a)(5)(B) to ensure that creditors ... do 'receive a fair repayment,' ' " the section

---

**3.** These sections do not apply in this Chapter 12 case. Title 11 U.S.C. § 1225 sets forth the requirements for confirmation of a Chapter 12 plan. Although the requirements for confirmation of a Chapter 12 plan are not identical to those set forth in § 1129, the court finds that Abner's arguments that the debtors' plan unfairly treats his secured claim and is unfeasible are appropriate in the context of this Chapter 12 case.

**4.** As stated, this subsection does not apply in this case.

**5.** Although Abner did not bring his objections under these subsections, the court finds that his arguments fall within their purview.

serves much the same purpose as 11 U.S.C. § 1129(b)(1) and (2) in a Chapter 11 case. *In re Koch,* 131 B.R. 128, 130 (Bankr. N.D.Iowa 1991), quoting *Farmers Home Admin. v. Fisher (In re Fisher),* 930 F.2d 1361, 1362 (8th Cir.1991). Similarly, the feasibility requirement of § 1225(a)(6) mirrors the protection provided in § 1129(a)(11). The court will consider each of Abner's arguments relating to the requirements set forth in § 1225.

### 1. *Length of time for repayment of the debtors' obligation and applicable interest rate*

■ The Bankruptcy Code offers no guidance as to the maximum acceptable length of time within which a debtor must pay off a secured claim. 131 B.R. at 130; 5 L.King Collier on Bankr. (MB) ¶ 1225.-03[4][a] at 1225–17 (1990). The bankruptcy court itself is left to resolve this issue based on the facts of the case. 5 L.King Collier on Bankr. (MB) ¶ 1225.03[4][a] at 1225–17 (1990). In determining the maximum acceptable length of time for extending a debtor's obligations to a secured creditor under a plan, courts have required debtors to support their proposals to lengthen the time for repaying obligations by presenting "evidence of reasonableness, customary lender practices, [and] market standards" in addition to showing that their proposal provides the secured creditors with the mathematical present value of their claims. 131 B.R. at 132, citing *In re LLL Farms,* 111 B.R. 1016, 1022 (Bankr. M.D.Ga.1990); *In re Foster,* 79 B.R. 906, 910–11 (Bankr.D.Mont.1987); and *In re Smith,* 78 B.R. 491, 494 (Bankr.N.D.Tex. 1987).[6] As *Collier* notes, "[t]he maximum period of time must be implied by the court from the present value and good faith requirements of section 1225." 5 L.King Collier on Bankr. (MB) ¶ 1225.03[4][b] at 1225–17 (1990).

■ The court believes that *all* of the circumstances of the case are relevant in determining the appropriate length of time for extending an obligation under a plan and disagrees with the *Mulberry* court's conclusion that the age of a creditor is irrelevant in determining how long a loan might be extended under a reorganization plan.[7] While the debtors in this case understandably included only the secured portion of their debt to Abner in their loan repayment plan, the court finds that extending the debtors' loan with Abner for 30 years would be inequitable. Importantly, Abner is not in the business of extending commercial credit; he is not a bank or lending institution. Abner loaned money to the debtors for a limited time after which he intended to use the funds for his retirement. The court accordingly concludes that applying a purely economic or market analysis in determining the appropriate length of time the loan to Abner may be extended is inappropriate.

Abner points out that he will be 99 years old when the debtors' loan matures under the debtors' proposed plan. Although Abner possibly could locate a buyer for the debtors' promissory note and mortgage to him in the commercial market if the court were to approve the debtors' plan, the court is not convinced that he should bear the burden of attempting to find such a purchaser. As a non-commercial lender, Abner would not have immediate access to sources of potential purchasers or the bargaining power of a commercial lender in negotiating a fair sale of the debtors' note and mortgage at a discount. As the debtors stated, Abner no doubt would have to offer a substantial discount to a potential purchaser of the note and mortgage given the risk involved and his status as a non-commercial lender.

In addition, albeit commercial lenders might be able to absorb losses through discount sales and/or recoup their investments over a long period, Abner (as an individual who intended to retire on the funds in controversy) is not in such a position. Although the debtors' obligation to Abner is secured by agricultural land on which commercial lenders traditionally of-

---

**6.** *Contra In re Mulberry Agr. Enterprises, Inc.,* 113 B.R. 30, 32 (D.Kan.1990) (considering only economic factors).

**7.** 113 B.R. at 33.

fer credit terms of 10 years or more, the court finds that tagging another 30 years on the debtors' contract with Abner would not be fair and equitable given the unique circumstances of the creditor in this case. The court further notes that with the new, more restrictive standards for extending loans in the banking industry, even commercial lenders might not extend a loan on agricultural real estate for over 10 years.[8]

The court agrees, though, that some extension of the debtors' obligation to Abner may be appropriate. In their brief the debtors submitted that the court should extend the "amortization terms [of their obligation to Abner] to 25 years at the current market interest rate with a balloon payment due in ten (10) years from the confirmation of the Chapter 12 Plan...."[9] Debtors' brief at 3. The court's primary difficulty with this proposal is that the suggested balloon payment of the debtors' outstanding indebtedness to Abner within 10 years places Abner at considerable risk. While the court believes that a repayment of the debtors' obligation to Abner over 10 years or less under the debtors' plan of reorganization would sufficiently protect Abner's interests, the court questions whether the debtors have shown that a repayment plan with a substantial balloon payment due in 10 years is feasible.

■ Second, the court is concerned about the "current market interest rate" which the debtors proposed to pay to Abner. Extending the debtors' obligation even for only 10 years places Abner at considerable risk. In the interests of fairness, the court will require the interest rate on an obligation extended through a plan to be a competitive rate which takes into account the risks involved in the transaction. As the Eighth Circuit noted in *United States v. Doud*, 869 F.2d 1144, 1145 (8th Cir.1989), as quoted in 131 B.R. at 134, discussing applicable market rates of interest:

"The appropriate discount rate must be determined on the basis of the rate of interest which is reasonable in light of the risks involved. Thus, in determining the discount rate, the court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration for the quality of the security and the risk of subsequent default."

The court will require that the debtors' plan incorporate an interest rate equal to the prime rate for a similar loan plus an additional 3% for the added risk in the transaction.

### 2. *Feasibility of the debtors' plan*

■ Even if the length of the time for repayment of the debtors' obligations to Abner and the applicable interest rate included in the debtors' plan were acceptable to the court, the court is unable to find that the debtors' plan is feasible. The court's primary difficulty is that the debtors have failed to show that they will have sufficient funds to finance their proposals. Specifically, the debtors have not shown that they have a sufficient income for the next 30 years with which to repay their obligation to Abner pursuant to their plan. The schedules filed in this case indicate that Mr. Rose currently works for Delco Electronics ("Delco") in Kokomo, Indiana, in addition to farming. He has been employed at Delco for over 20 years and earns $33,160.32 annually (take-home pay) in his production position there. Mrs. Rose in turn receives social security and pension or retirement income of $12,492 annually. In addition, the debtors earn estimated annual gross income of $38,000 from farming operations. Inasmuch as the court has no evidence concerning when Mr. Rose intends to retire or the amount of Mr. Rose's retirement and/or pension benefits from which he might contribute the payments required under the plan after retiring, the court has serious doubts whether the debtors can expect to maintain their current income level for another 30 years and/or

---

**8.** The debtors failed to present any evidence of customary lender practices in this case.

**9.** According to the court's calculation, this proposal would obligate the debtors to make monthly payments of $30,296.22 for 10 years on their $275,000 obligation with a balloon payment of $230,435.46 due thereafter (assuming an interest rate of 10% per year).

for the life of their plan. Most likely, Mr. Rose will retire prior to the end of the 30–year period and the Roses' income will drop considerably at that time. The court therefore concludes that the debtors' proposal to pay Abner over 30 years is not feasible.

█ Based upon the evidence before it, the court believes that the debtors' income should remain stable and perhaps increase moderately over the next 10 years. The court thus concludes that a 10–year repayment of the debtors' obligation to Abner would be appropriate. The debtors' proposal to repay their obligation to Abner at a 25–year amortization rate with a balloon payment due at the end of 10 years, however, is unacceptable to the court. Again, the debtors have failed to show that they will have the ability to repay the balance of Abner's obligation within 10 years either by obtaining a new loan at that time from another party or paying the balance from their own resources. As the debtors have not shown that their options for repaying the balance of the loan at the end of 10 years are viable, the court is unable to find that this proposal is feasible. Considering the debtors' and Abner's interests, the court concludes that a 10–year amortization of the debtors' obligation to Abner with equal annual payments for 10 years would be equitable to all parties, assuming the debtors would be able to make the payments for the 10 years.[10]

### CONCLUSION

The court now sustains Abner's OBJECTION TO CONFIRMATION of the debtors' CHAPTER 12 FARM PLAN, finding that the debtors' plan unreasonably extends the debtors' obligations to Abner and is not feasible. The debtors shall have until *December 20, 1991*, to file an amended plan with the court or take whatever action may be necessary.

SO ORDERED.

---

10. At an annual interest rate of 10% the debtors' annual payments on a 10–year amortized loan paid over 10 years would be $44,754.98.